Submitted on record and brief January 29, accused suspended for two years
August 16, 1988

In re Complaint as to the Conduct of
# ROBERT T. CHANDLER,
*Accused.*

(OSB 86-22/86-92; SC S33362)

760 P2d 243

Teresa J. Schmid, Assistant Disciplinary Counsel, Lake Oswego, filed the brief for the Oregon State Bar.

No appearance contra.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar filed an amended complaint against the accused on December 30, 1986. A hearing was held on July 14, 1987, and the Trial Panel found the accused guilty of several violations relating to neglect, failure to account for client property, and failure to cooperate with Bar authorities. The Trial Panel decided that the accused should be suspended from the practice of law for three years. The accused did not appear before the Trial Panel or this court, nor did he submit a brief or otherwise offer a defense. We review *de novo* upon the record presented before the Bar and the brief that the Bar has submitted. ORS 9.536(3).

The accusations made against the accused fall into three causes of complaint, each of which we consider in turn. We then review the sanction imposed by the Trial Panel in light of the petition of the Bar requesting that the accused be disbarred.

## I. DISCIPLINARY RULE VIOLATIONS

### A. *The Cobarrubia Complaint.*

The first cause of complaint concerns a complaint against the accused by the Cobarrubia family and their California lawyer, John Kitta. In July 1982, members of the Cobarrubia family were injured in an automobile accident in Alameda County, California. The Cobarrubias, who then were living in Oregon, employed the accused to represent them in a claim for injuries arising from the automobile accident. At the Cobarrubias' suggestion, the accused associated Kitta. Kitta was to file the complaint, with Kitta and the accused agreeing to share fees in proportion to their responsibilities. Kitta filed the complaint in behalf of the Cobarrubias in Alameda County, California. From 1982 to September 1985, the Cobarrubias attempted to communicate with the accused regarding the status of their claim. The accused, however, did not return their telephone calls or otherwise communicate with the Cobarrubias.

In September 1985, Kitta notified the accused by letter that the Cobarrubias wanted Kitta to act as their exclusive

legal counsel. Kitta therefore requested that the accused forward the Cobarrubia file to Kitta's office. Kitta's letter was countersigned by Mr. and Mrs. Cobarrubia. When no response to his request for the file was forthcoming, Kitta had his office secretary telephone the accused every week to request the file. A second letter was sent, again requesting the file. Finally, the accused was reached by telephone on December 5, 1985. The accused told a member of Kitta's office that a copy of the file would be sent immediately.

By January 29, 1986, however, Kitta still had not received the file. He again wrote to the accused, requesting the file, enclosing a Substitution of Attorney form executed by the Cobarrubias and dated September 25, 1985, and informing the accused that he would inform state and local bar associations if the accused did not respond within 10 days. Again, no response was forthcoming, so Kitta wrote to the Bar on February 28, 1986, and sought to file a complaint against the accused. On May 19, 1986, the accused finally forwarded a copy of the Cobarrubia file to Kitta.

In conversations with a Bar investigator, the accused did not give a reasonable explanation for his behavior. The accused never claimed a lien on the Cobarrubia file for unpaid costs, nor did he rely upon any term or condition of his employment with the Cobarrubias. The only reason given by the accused for the delay was that he lost contact with the Cobarrubias, placed their file in storage, and then misfiled the file in storage. The accused had retrieved the file, however, by November 1985, which was at least six months before he finally did forward it to Kitta.

The Bar has charged the accused with violating *former* DR 6-101(A)(3) (now DR 6-101(B)) and *former* DR 9-102(B)(4) (now DR 9-101(B)(4)) of the Code of Professional Responsibility. We will refer exclusively to the present version of these disciplinary rules because they, in all relevant respects, do not vary from their predecessors. DR 6-101(B) provides:

> "A lawyer shall not neglect a legal matter entrusted to the lawyer."

DR 9-101(B)(4) provides, in part:

> "A lawyer shall:

"(4) Promptly pay or deliver to a client as requested by the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive."

In this case, the accused failed to communicate effectively with the Cobarrubias for three years regarding the claim they sought to bring in California. He placed their legal file in storage while their case was still active, misfiled the file, and then failed to forward the file to Kitta for seven months despite repeated requests that he do so. The accused's actions and omissions amount to neglect of a legal matter entrusted to him in violation of DR 6-101(B).

We also conclude that the accused violated DR 9-101(B)(4). The accused was required, upon request of the Cobarrubias and their counsel, to forward the Cobarrubia file promptly to Kitta. This the accused failed to do, in violation of the disciplinary rule. *In re Kneeland,* 281 Or 317, 574 P2d 324 (1978).

### B. Cooperation with Bar Inquiry Into Cobarrubia Complaint.

The second cause of complaint concerns an inquiry carried out by the Bar in response to the complaint of the Cobarrubias and Kitta. On March 10, 1986, the office of the General Counsel of the Bar sent the accused a letter notifying him of the complaint against him and asking for a response by March 31, 1986. The accused never responded to this request. The Bar then referred the matter to the Benton/Lincoln/Polk County Local Professional Responsibility Committee (LPRC) for investigation.

On April 15, 1986, an LPRC investigator wrote to the accused and asked that he respond to the Cobarrubia complaint. Again, there was no response. The investigator then subpoenaed the accused to appear at the Benton County Courthouse with the Cobarrubia file. The accused did comply with the subpoena.

On the basis of these actions and omissions, the Bar charged the accused with violating DR 1-103(C). That rule provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply

with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

On these facts, it is apparent that the accused did not respond fully to inquiries from Bar authorities empowered to investigate the Cobarrubia complaint. In fact, the accused never responded to the office of the General Counsel and responded to the LPRC only after being subpoenaed. The accused has not attempted to justify his omissions by resort to any claim of right or privilege. We therefore conclude that the accused has violated DR 1-103(C).

### C. Cooperation with State Lawyers Assistance Committee.

The final cause of complaint concerns activities of the State Lawyers Assistance Committee (SLAC) vis-a-vis the accused. On June 1, 1985, the State Professional Responsibility Board of the Bar referred the accused to the SLAC. This referral grew out of complaints against the accused concerning his handling of collection and divorce matters that have been the subject of previous disciplinary actions. *See In re Chandler (Chandler I),* Disciplinary Board Opinion, Nos. 84-126, 84-127 (7-31-86) and *In re Chandler (Chandler II),* 303 Or 290, 735 P2d 1220 (1987). On June 7, 1985, both the accused and the chairperson of the SLAC were notified of the referral through correspondence from the office of the General Counsel. The chairperson then wrote to the accused to inform him of the purpose and function of the SLAC and to notify him that a SLAC committee member would contact him to discuss the referral.

Accordingly, on June 26, 1985, a SLAC committee member wrote to the accused and offered to meet with him. The committee member placed several telephone calls to the accused's office, none of which were answered. Neither the chairperson nor the committee member ever received a response from the accused.

Subsequently, on May 3, 1986, the SLAC voted to refer the accused to the office of the General Counsel for an investigation. On May 7, 1986, the SLAC chairperson wrote to the office of the General Counsel to inform that office of the

accused's failure to respond to the SLAC's attempts to contact him. The office of the General Counsel wrote to the accused on June 12, 1986, to sum up the attempts that the SLAC had made to reach him and to request a response by July 3, 1986. When no response was forthcoming, the office of the General Counsel referred the matter to the Benton/Lincoln/Polk County Local Professional Responsibility Committee (LPRC) for an investigation.

An LPRC investigator then interviewed the accused by telephone on August 26, 1986. The accused admitted to communication from the SLAC in 1985, and stated that he was not sure that he tried to respond. The accused stated, however, that he thought that he was not required to respond and that the matter was a voluntary one. Again, the accused did not claim a right or privilege justifying his failure to cooperate with the SLAC.

On these facts, the Bar has charged the accused with violating DR 1-103(C) and DR 1-103(F)(1) and (3). DR 1-103(C) previously has been quoted. DR 1-103(F)(1) and (3) provide:

"A lawyer who is the subject of a complaint or referral to the State Lawyers Assistance Committee shall, subject to the exercise of any applicable right or privilege, cooperate with the committee and its designees, including:

"(1)  Responding to the initial inquiry of the committee or its designees;

"* * * * *

"(3)  Participating in interviews with the committee or its designees."

Plainly, the accused did not respond to the reasonable request of the General Counsel that he respond by July 3, 1986; therefore, the accused violated DR 1-103(C). It also is clear that the accused failed to respond to the multiple attempts by the SLAC to contact him. He failed both to respond to the initial inquiries by the SLAC chairperson and the committee member and to participate in meetings that the committee member attempted to arrange. In so failing, he does not assert a right or privilege. Accordingly, we conclude that the accused has violated DR 1-103(F)(1) and (3).

## II. SANCTION TO BE IMPOSED

### A. *Analytical Framework.*

■　We have concluded that the accused violated four disciplinary rules concerning neglect, failure to account for client property, and failure to cooperate with Bar authorities. We now must determine the appropriate sanction. In so doing, we recognize that the purpose of sanctions is not to penalize the accused, but rather to protect the public and the integrity of the legal profession. *Ex parte Finn,* 32 Or 519, 531, 52 P 756 (1898).

■　To assist us in determining the sanction, we again refer to the Standards for Imposing Lawyer Sanctions approved by the American Bar Association in 1986 (ABA Standards). *In re Willer,* 303 Or 241, 250, 735 P2d 594 (1987). That analytical framework calls for a consideration of the following factors: (1) The ethical duty violated; (2) the lawyer's mental state; (3) the extent of the injury, actual or potential, caused by the lawyer's misconduct; and (4) aggravating or mitigating factors. ABA Standards 3.0.

■　1. *Ethical Duties Violated.* By his actions and failures to act, the accused breached duties owed to his clients, the Cobarrubias, and to the legal profession. ABA Standards 4.0 and 7.0.

2. *Mental State.* This is more difficult to ascertain because the accused has not appeared and defended himself in this proceeding. Previously, the accused partly ascribed his problems to overwork and inexperience, factors which in themselves say little about his mental state. *See Chandler I, supra.*

On the facts before us, we cannot say that the accused acted with the most culpable mental state, intent, *i.e.,* "with a conscious objective or purpose to accomplish a particular result by misleading the client." *In re Willer, supra,* 303 Or at 250; *see* ABA Standards at 6. Nothing leads us to conclude that the accused consciously attempted to mislead his clients or even the Bar, for that matter.

We do conclude, however, that the accused acted or failed to act with "knowledge," the next most culpable mental

state. ABA Standards at 6. Knowledge consists in "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. The accused could not have been unaware that his conduct posed difficulties for his clients; he also could not have been unaware that his conduct towards Bar authorities was other than what was required from a member of the Bar.

3. *Injury.* "Injury" is defined as harm to a client, the public, the legal system, or the legal profession that results from a lawyer's misconduct. *Id.* Injury may range from "serious injury" to "little or no injury," with "injury" alone being anything greater than "little or no" injury. *Id.* In this case, we have not found any actual injury to the accused's clients, the Cobarrubias, nor have we been able to find that they potentially were injured by the accused's neglect and failure to forward their file promptly.[1]

Because of the lack of evidence of intent on the accused's part and the lack of a palpable or potential injury to his clients, to this point we conclude that the most severe sanction that we might impose would be suspension, reprimand, or admonition. *See* ABA Standards 4.11, 4.41, and 7.1. Disbarment also would not be appropriate because the accused apparently did not intend to obtain a benefit for himself or another in violating duties owed to his profession. ABA Standards 7.1. Unless we conclude from an examination of the aggravating factors that disbarment would be justified, that sanction is not warranted.

4.a. *Aggravation.* Three aggravating factors are established in this case: Prior disciplinary offenses, a pattern of misconduct, and multiple offenses. ABA Standards 9.22.

(1) *Prior Disciplinary Offenses.*

As noted above, the accused twice previously has been the subject of disciplinary proceedings. In each of the two previous cases, the accused was found guilty of violating the same disciplinary rules as are at issue in this case: DR 1-103(C)

---

[1] An LPRC investigator stated before the Trial Panel that Kitta, the California lawyer for the Cobarrubias, "indicated that the Cobarrubias were facing some possible prejudice" because of some missing information or documentation from the accused. Only speculation would allow us to fill in the evidentiary gap. We decline to speculate.

[failure to cooperate with Bar authorities], DR 6-101(B) [neglect of entrusted legal matter] and DR 9-101(B)(4) [failure promptly to turn over client property].

In *Chandler I,* the accused was given a 30-day suspension and 18 months probation. In *Chandler II,* a 63-day suspension was imposed. Apparently, the accused has not sought reinstatement and remains on suspension.[2]

### (2) *Pattern of Misconduct.*

From the foregoing discussion, it is apparent that the accused developed a clear pattern of misconduct by neglecting entrusted legal work of five clients, failing promptly to return three clients' property, and substantially refusing to cooperate with Bar authorities. With substantial overlap, the pattern of neglect spanned a period from approximately November 1982 to March 1985 in *Chandler I.* In *Chandler II,* the neglectful conduct ran from approximately June 1984 through May 1986. In this case, the neglect ran from approximately July 1982 to mid-May 1986. The three failure-to-return clients' property violations approximately fell within the time-period from October 1984 to mid-May 1986. The pattern of failure to cooperate with Bar authorities commenced approximately in November 1984 and continued at least up until the Trial Panel hearing in this case in July 1987.

### (3) *Multiple Offenses.*

Although this case involved but one set of clients, violations of three disciplinary rules have been found.

The Bar also argues that the evidence in this case supports a finding of aggravation of ABA Standard 9.22(e) (intentional failure to comply with Bar rules or orders). That the accused failed to follow the rules and orders of Bar authorities is clear. But here, again, we cannot find by clear and convincing evidence that the accused intentionally failed to comply. *In re Willer, supra,* 303 Or at 250; *see* ABA Standards at 6.

---

[2] This court has power to discipline a lawyer even though the lawyer has been suspended from the practice of law. *In re Coe,* 302 Or 553, 557, 731 P2d 1028 (1987). A lawyer continues to have ethical obligations under the disciplinary rules during a period of suspension and disciplinary proceedings may proceed during the suspension period. *In re Hereford,* 306 Or 69, 73-74, 756 P2d 30 (1988).

4.b. *Mitigation.* As for mitigating factors, this case establishes but one: Absence of a dishonest or selfish motive. ABA Standards 9.32(b).

A second mitigating factor also might be found, however: Inexperience in the practice of law. ABA Standards 9.32(f). Although the accused was admitted to practice in 1976, at the time the misconduct in this case started to develop, the accused had been in private practice for approximately two years. Nevertheless, in light of the nature of the misconduct in this case and the accused's general experience as a public lawyer for the years preceding his entry into private practice, we decline to find mitigation on this ground.

We thus are left with three aggravating factors and one mitigating factor. This suggests that some form of suspension is warranted. *But see* ABA Standards 4.12, 4.42, and 7.2.[3] The Bar vigorously argues that the accused should be disbarred, encapsulating its reasons as follows: "The accused's aggravated history of client neglect, which twice before resulted in disciplinary suspension, warrants disbarment." The Bar apparently heavily relies upon this being the third disciplinary case in which the accused has been found guilty and that the previous cases resulted in suspensions. However, as discussed earlier and as acknowledged by the Bar, the accused's misconduct occurred in approximately the same time-period. Except as noted below, the misconduct did not follow, but preceded the disciplinary proceedings. We are mindful that the misconduct, spanning approximately four years, has involved five separate clients and has resulted in 12

---

[3] ABA Standards 4.12 provides:

"Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."

ABA Standards 4.42 provides:

"Suspension is generally appropriate when:

"(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

"(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

ABA Standards 7.2 provides:

"Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

findings of guilt. Considering the nature of the misconduct and the overlapping time-period in which it occurred, however, rather than the happenstance of the sequential processing of the proceedings, we deem disbarment to be unwarranted.

Two troubling aspects remain. The first is that, as similarly noted in *Chandler II,* even after the Trial Panel hearing in *Chandler I* was held and proceedings were initiated against the accused in *Chandler II,* he delayed in returning property to his client. To some extent, this misconduct becomes sequential because his transgressions continued beyond the time-period involved in his previous disciplinary cases.

Second is the failure of the accused to cooperate with the SLAC. Although we are unable to conclude, by clear and convincing evidence, that the accused intentionally violated the requirement to cooperate, he plainly failed to take advantage of that program. The purpose of that program "is to provide supervision and assistance to those lawyers whose performance or conduct may impair their ability to practice law or professional competence." ORS 9.545(1)(c). We deem the failure to take advantage of this program to be serious because, among other things, it increases the risk to the public and impairs the integrity of the legal profession.

For the reasons stated, we believe the appropriate sanction to be a suspension for two years. We order that the accused be suspended from the practice of law for a period of two years commencing on the effective date of this judgment. *See* ORAP 11.03.

The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).