Submitted on record and briefs May 1, accused suspended for six months after the effective date of this decision August 29, 1989

In re Complaint as to the Conduct of

# WILLIAM H. JONES,
*Accused.*

(OSB 87-43; SC 24730)

779 P2d 1016

Susan K. Roedl, Lake Oswego, and Stephen R. Blixseth, Eugene, filed the brief and the reply brief for the Oregon State Bar.

William H. Jones, Roseburg, filed the brief *pro se* for the accused.

## PER CURIAM

In this lawyer disciplinary proceeding, the accused agreed to let Delores McElmurry, a nonlawyer, use his name as lawyer on papers she filed in her dissolution processing operation. The issues raised by the bar's appeal from the trial panel's decision are whether the accused acted with a culpable mental state and, if so, whether the previously imposed sanction should be increased.

The trial panel found that in the course of his participation with McElmurry in her unauthorized practice of law, the accused violated several disciplinary rules (DRs). It recommended two years unsupervised probation conditioned on the accused's attendance at 12 hours of legal ethics continuing education courses. The trial panel also recommended a 45-day suspension from practice if the accused fails to complete the ethical coursework, but suspended execution of that suspension.

The trial panel found accused's conduct was "negligent rather than culpable." The bar contends that, under the Standards for Imposing Lawyer Sanctions approved by the American Bar Association in 1986 (ABA Standards), accused violated the DRs with a greater culpable mental state. ABA Standards 3.0 at 7. Because we find that the accused acted with conscious awareness that the nature of his conduct violated the rules, and because the conduct facilitated McElmurry's unlawful activities that harmed many people who could reasonably think that the accused was protecting their legal interests, we impose a greater sanction.

We adopt the trial panel's findings that:

"To assist McElmurry, the accused provided pleading paper and a letterhead stamp for her to use in processing such proceedings. McElmurry and the accused together prepared a newspaper ad using the accused's title as an attorney, and his address and phone number for legal services. The advertisement apparently listed McElmurry separately from the accused, with her phone number, soliciting domestic relation services.[1] * * * The accused introduced McElmurry to a

---

[1] Evidence of the exact contents of the advertisement is sparse as no copy is in evidence. The text offered "Divorce and other legal services" by the accused as a lawyer. When the accused participated in placing the advertisement, he intended that all dissolution services would be performed by McElmurry, with McElmurry having sole discretion whether the accused's legal expertise was required in any particular case.

county clerk as his agent for pickup and delivery of the accused's documents with the Douglas County Clerk. The accused directed a letter to a notarial employee of the County Surveyor's office authorizing her to notarize the accused's signature to documents purportedly signed by him, not signed in the presence of the notary."[2]

According to the accused's own deposition, he knew that McElmurry had previously been contacted by the Oregon State Bar regarding similar activities. The accused admitted that he was aware of the warnings McElmurry received from the bar. The warnings advised her to discontinue her unauthorized practice of law. Accused testified that he reasoned McElmurry must have been giving legal advice, beyond her competence to give; otherwise she would not have been contacted by the bar to stop the practice. Thus, he thought, if he instructed her to bring any legal question to him, the bar's concerns would be satisfied. But he took no steps to enforce his instruction or to test her ability to determine when legal help was needed. We find also that at no time were dissolution clients required to meet or speak with the accused. Thus, preparation and filing of their dissolutions, petitions, motions, and decrees occurred without benefit of review by the accused but they bore his name as attorney.

To assist us in determing the sanction, we refer to the ABA Standards. *See In re Willer,* 303 Or 241, 250, 735 P2d 594 (1987). The ABA Standards call for a consideration of (1) the ethical duty violated, (2) the lawyer's mental state, (3) the extent of the injury, actual or potential, caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating factors. ABA Standards 3.0. In this case we consider injury to others first, to avoid duplicate factual statements.

## INJURY TO CLIENTS OR OTHERS

The trial panel stated that "there is no question but what the public generally, and clients of McElmurry in particular, were deceived into believing that their personal domestic relations proceedings were being handled by, or under the direction of the accused" and that "the injuries which resulted by permitting his name and status as a lawyer to be used by a non-lawyer resulted in public deception and were the vehicle

---

[2] The bar made no charge of misconduct concerning the notarization.

by which McElmurry committed fraud upon the court system." We adopt the trial panel's findings just stated and further find that no fewer than 16 people were bilked of at least $3,471.50 by McElmurry through the dissolution operation which the accused helped set in motion, albeit with unintentional results. In a number of cases, clients thought their marriages were lawfully dissolved when in fact their papers had not even been filed.

## ETHICAL DUTIES VIOLATED

The trial panel found accused violated DR 1-102(A)(1), DR 1-102(A)(4), as well as DR 3-101(A) of the Code of Professional Responsibility. We so find as well.

DR 1-102(A)(1) and (4) provide:

"It is professional misconduct for a lawyer to:

"(1)   Violate these disciplinary rules, knowingly assist or induce another to do so, or do so through the acts of another;

"* * * * *

"(4)   Engage in conduct that is prejudicial to the administration of justice[.]"

DR 3-101(A) states:

"A lawyer shall not aid a nonlawyer in the unlawful practice of law."

The accused knowingly assisted McElmurry in ways which contributed to her violating the prohibition against the unauthorized practice of law. His directive to McElmurry to refrain from dealing with legal questions was neither enforced by the accused nor supervised with the diligence necessary for such enforcement. By analogy, the accused knowingly loaded and cocked a pistol which he handed to McElmurry, knowing she lacked the training to fire it safely, when he enabled her to perform dissolution services using his name. He knew she was a person who had probably fired a similar pistol under unsafe conditions on previous occasions since the bar had, as he thought, found her to be giving legal advice which she lacked the training to give.

Accused was not candid. Permitting pleadings to bear his name, although he took no part in their preparation, misled both the court and McElmurry's clients. Such conduct was

prejudicial to the administration of justice. Moreover, it was a deception practiced both on the court and the clients.

The accused's unwitting choice of an untrustworthy associate does not excuse his knowing participation in these violative activities. It may, however, bear upon the degree to which he could foresee the potentially harmful results flowing from his conduct.

## CULPABLE MENTAL STATE

Although the trial panel noted that the accused had suffered from alcoholism for a portion of his professional life, it entered no specific factual findings to support its conclusion that the accused was "negligent rather than [more] culpable." No one testified that the accused used alcohol during the relevant time period. There was no finding of memory lapses or impairment of cognitive function. Nor was any testimony offered showing the effect of chemical abuse on the accused's judgment or intent during that period in order to potentially negate the mental element. *See In re Eads,* 303 Or 111, 122-23, 734 P2d 340 (1987).

We find that accused's participation in the relatively explicit arrangements between McElmurry and himself was a knowing act of impropriety and misconduct in violation of the bar's disciplinary rules. *See In re Chandler,* 306 Or 422, 429, 760 P2d 243 (1988). This is not to say that the accused knew McElmurry was committing crimes or defrauding clients. We find that the accused did not intend ill by his participation. Rather, he knew he was participating in a scheme whereby McElmurry appeared to the court personnel and the clients to be working with a lawyer when, for all intents and purposes, she was not. The accused was consciously aware of the nature of his conduct and of the many attendant circumstances set forth above. Moreover, he expected some personal gain and did benefit from typing services performed by McElmurry for him in other matters.

## AGGRAVATION AND MITIGATION

In mitigation, we note absence of a specific dishonest motive or any intent to effectuate the results flowing from McElmurry's criminal conduct. Upon learning that two clients had been bilked by McElmurry the accused offered to help; one at no charge, the other for a fee.

In sum, the accused, an experienced practitioner admitted to the bar in 1951, knowingly participated in a dissolution processing operation which the clients could reasonably expect him to be professionally supervising or performing. He knew lack of supervision might result in injury to clients. Injury to clients, the public, and the legal system resulted. The accused violated multiple disciplinary rules.

The trial panel's recommendation appears to be little more than a requirement that the accused attend six hours of MCLE accredited courses involving ethics in each of the next two years. In Oregon, the accused is already obligated to attend 15 hours of continuing legal education annually which may include six hours, but not less than two hours, on ethics. If the accused does what he is already professionally required to do for the next two years, in effect, there is no suspension or other sanction under the trial panel recommendation. This is inadequate given the nature of the violations and the fact the violations enabled harmful results. Suspension is appropriate for each of the violations involved because in each knowledge of misconduct and harm to others or the justice system coincide. ABA Standards 4.42, 4.62, 6.12, and 7.2.[3] *See In re Chandler, supra,* 306 Or at 431 n 3.

The accused is suspended from the practice of law for

---

[3] ABA Standard 4.42 provides:

"Suspension is generally appropriate when:

"(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

"(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

ABA Standard 4.62 provides:

"Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client."

ABA standard 6.12 provides:

"Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

ABA Standard 7.2 provides:

"Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system."

six months after the effective date of this decision.[4] Accused is required to submit the formal application provided in BR 8.1(b) before resuming the practice of law.[5]

**LINDE, J.,** dissenting.

I respectfully disagree with the sanction imposed by the court.

The Oregon State Bar asserted two reasons for asking us to review the decision of the Trial Panel of the Disciplinary Board. The bar claimed that the accused himself engaged in the practice of law during a period of suspension from practice. Like the Trial Panel, the court finds this charge not proven.

The bar's second objective is to increase the penalty for the violations that the Trial Panel and the court find to have occurred. The Trial Panel imposed a 45-day suspension, with execution of that sentence suspended for two years during which the accused has to complete a program of education in legal ethics. The majority increases the penalty to an outright suspension for six months, largely upon a finding that the accused aided Delores McElmurry's improper activities not negligently, as the Trial Board found, but knowingly.

Even so, in my view the period of suspension is too long. It seems to hold the accused accountable not only for aiding McElmurry to perform acts that constituted practicing law without proper qualifications but also for the fact that McElmurry's conduct proved fraudulent and seriously harmed people who used her services. But the court finds only

---

[4] The bar appeals dismissal of its second cause of complaint. The cause alleged that the accused practiced law while under a non-disciplinary suspension. During the suspension period, the accused admittedly wrote a former client three letters concerning service of summons in a dissolution proceeding that he had filed for the client before the suspension began. Because neither the text of the letters nor testimony of the client as to their content and effect are in the record, and because other testimony concerning their content is incomplete and inconclusive, we agree with the trial panel's finding that the bar failed to prove the allegations by clear and convincing evidence.

[5] Before practice may be resumed, BR 8.1(b) requires an application showing character and fitness needed to practice law and that resumption of practice will not be detrimental to the administration of justice or public interest. The bar has discretion in review and action on the application.

that the accused knew of McElmurry's unauthorized activities, not that he knew she was defrauding people. Gravity of harm is a factor in assessing a sanction, but it is more directly relevant to the sanction in the usual situation when it results from the lawyer's own professional failings than when someone else defrauds persons under circumstances that the accused helped to make possible but did not intend or expect.

When that factor is reduced to its proper scope, I believe that the Trial Panel's sanction was within the appropriate range, although I would make the suspension effective now rather than conditional on future events. I therefore dissent from the length of the suspension ordered by the court.

Jones, J., joins in this dissenting opinion.