WALLER, Presiding Justice,
 

 for the Court.
 

 ¶ 1. The Mississippi Bar appeals from a complaint tribunal’s order imposing a one-year, retroactive suspension on Gail Thompson
 
 [1]
 
 for violating Rules 1.15, 5.3, and 8.4(a), (d), of the Mississippi Rules of Professional Conduct. We affirm the complaint tribunal’s order with regard to its finding that Thompson violated Rules 1.15, 5.3, and 8.4(a), (d), but reverse its finding that Thompson did not violate Rule 5.5(b). Furthermore, we reverse the one-year, retroactive suspension and remand this case for consideration of the proper sanction(s) in light of the nine
 
 Liebling
 
 factors that must be examined in attorney discipline matters.
 
 Liebling v. The Mississippi Bar,
 
 929 So.2d 911 (Miss.2006).
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. Gail Thompson employed Robert Tubwell, a former inmate at the Mississippi State Penitentiary at Parchman,
 
 [2]
 
 as a paralegal at the Thompson Law Firm in Tunica County. Thompson hired Tubwell based, in part, on his reputation as a successful writ writer while at Parchman, and his potential ability to generate business for Thompson’s firm.
 

 ¶ 3. Mario McGaughy, an inmate serving a life sentence without the possibility of
 
 *333
 
 parole, met Tubwell while the two were at Parchman. When McGaughy learned that Tubwell was working as a paralegal, he wrote Tubwell at Thompson’s law office. McGaughy sought to hire a lawyer to file his petition for post-conviction relief. A series of communications then ensued between Tubwell and McGaughy, McGau-ghy’s mother, and McGaughy’s stepfather.
 

 ¶ 4. On February 1, 2002, Tubwell wrote McGaughy on Thompson Law Firm letterhead.
 
 [3]
 
 The letter stated that Tubwell had consulted with Thompson and that she had agreed to work with him on McGaughy’s case. Tubwell stated that everything would be reviewed by an attorney and quoted McGaughy a fee of $500 for the preliminary work. He also requested that McGaughy send future correspondence to his Southaven apartment address,
 
 [4]
 
 and provided McGaughy his personal home and cellular- phone numbers.
 

 ¶ 5. It is somewhat unclear whether the $500 payment was made, and if so, to whom such payment was directed. McGaughy stated that his father paid $550 via money order, but could not confirm whether the payment was made to the Thompson Law Firm or to Tubwell himself. Tubwell acknowledged that he received fifty dollars for travel-related expenses, but claimed that he never received the $500 money order.
 
 [5]
 
 Thompson also denied ever receiving anything from McGaughy. Regardless, the complaint tribunal found implicitly that the $500 payment was made.
 
 [6]
 

 ¶ 6. On March 18, 2002, Tubwell again wrote McGaughy on Thompson Law Firm letterhead. Tubwell advised McGaughy that he had a strong case and that there was a seventy-percent chance that this Court would reverse and grant a new trial.
 

 ¶ 7. Tubwell eventually obtained McGau-ghy’s court records and mailed McGaughy his files, along with a pro se petition for post-conviction relief.
 
 [7]
 
 Per Tubwell’s instructions, McGaughy signed and had notarized the necessary documentation without realizing that he was filing pro se. This Court ultimately denied McGaughy’s pro se petition for post-conviction relief.
 

 ¶ 8. Thereafter, Tubwell informed McGaughy that the next step would be to file a writ of habeas corpus in federal court. Tubwell later wrote McGaughy to inform him that he had begun work on filing the habeas corpus petition. But a petition for habeas corpus was never filed on McGaughy’s behalf.
 

 ¶ 9. On November 18, 2004, McGaughy, on the belief that he had hired Thompson’s law firm to represent him on his application for post-conviction relief and his federal habeas corpus petition, filed an informal complaint against Thompson with the
 
 *334
 
 Mississippi Bar. In its Amended Formal Complaint, the Bar alleged that Thompson violated Rules 1.2(a), 1.15, 1.3, 1.6(a), 5.8, 5.5, and 8.4(a),(d), of the Mississippi Rules of Professional Conduct.
 

 ¶ 10. A hearing was held on March 14, 2006, in which Thompson testified that she was unaware of Tubwell’s correspondence with McGaughy, and claimed that he had taken advantage of her. Thompson stated that she trusted Tubwell and had instructed him that any cases he was working on had to come through her office. Yet she admitted that additional safeguards should have been implemented.
 

 ¶ 11. In addition to the McGaughy matter, the Bar inquired about Thompson’s handling of client files after she moved her law office irom Oxford to Tunica in 2000, and when she closed her Tunica practice in 2003. When Thompson moved her practice from Oxford to Tunica in 2000, she left some client files in a storage facility in Oxford. She admitted that those files had been lost. In 2003, Thompson closed her Tunica office after being suspended from the practice of law for a period of eighteen months.
 
 [8]
 
 After closing the Tunica office, Thompson kept two file drawers of client files in a storage unit in Tunica. She testified that those file drawers were later moved to the home/office of Oxford attorney Alvin Chambliss. She explained that those file drawers remain locked because she lost the keys.
 

 ¶ 12. After hearing testimony and arguments, the complaint tribunal issued its opinion on March 16, 2007. The tribunal’ found that Thompson had not violated Rules 1.2(a), 1.3, 1.6(a), or 5.5 of the Rules of Professional Conduct. However, the complaint tribunal determined that Thompson had violated Rules 1.15, 5.3, and 8.4(a), (d). As a result, Thompson was suspended from the practice of law for a period of one year, effective from March 14, 2006.
 
 [9]
 
 Thompson was further ordered to pay costs and expenses incurred by the Bar in the amount of $24.53.
 

 ¶ 13. Aggrieved by the complaint tribunal’s ruling, the Bar appeals to this Court.
 

 STANDARD OF REVIEW
 

 ¶ 14. When reviewing matters pertaining to attorney discipline, this Court “reviews the evidence de novo, on a case-by-case basis, sitting as triers of fact, and no substantial evidence or manifest error rule shields the Tribunal from scrutiny.”
 
 Foote v. Miss. State Bar Ass’n.,
 
 517 So.2d 561, 564 (Miss.1987). However, the Court may grant deference to the tribunal “due to its exclusive opportunity to observe the demeanor and attitude of witnesses, including the attorney, which is vital in weighing evidence.”
 
 The Miss. Bar v. Logan,
 
 726 So.2d 170, 175 (Miss. 1998) (quoting
 
 Parrish v. The Miss. Bar,
 
 691 So.2d 904, 906 (Miss.1996)). The Bar bears the burden of proving by clear and convincing evidence that Thompson violated the rules of professional conduct.
 
 Logan,
 
 726 So.2d at 175.
 

 DISCUSSION
 

 I. Whether Thompson failed to safeguard client property and/or improperly disclosed confidential client information.
 

 A. Rule 1.15: Safekeeping Property.
 

 ¶ 15. The complaint tribunal found that Thompson failed to adequately safe
 
 *335
 
 guard client property by losing or misplacing client files.
 

 ¶ 16. Rule 1.15 requires lawyers to hold the property of others with the care required of a professional fiduciary. M.R.P.C. 1.15, cmt. The loss of client files constitutes a violation of Rule 1.15.
 
 In re Craig,
 
 344 S.C. 646, 648-51, 545 S.E.2d 823 (2001);
 
 In re Evans,
 
 175 Ariz. 404, 406, 857 P.2d 1258 (1993).
 

 ¶ 17. Thompson admitted to losing client files that she had placed in an Oxford storage unit. Although Thompson said that she returned important documents to clients “most times,” she could not say that she had done so every time.
 

 ¶ 18. We find that Thompson violated Rule 1.15.
 

 B. Rule 1.6: Confidentiality of Information.
 

 ¶ 19. The complaint tribunal found that Thompson did not violate Rule 1.6 because there was no proof that she divulged any confidential client information. With certain exceptions, Rule 1.6 generally prohibits the disclosure of information relating to the representation of a client, absent the client’s informed consent. M.R.P.C. 1.6.
 

 ¶ 20. While Thompson admitted to losing the client files in Oxford, there is no evidence that any of those files were divulged. Likewise, there is no evidence that any of the client files from her Tunica office were disclosed.
 

 ¶ 21. We find that there is insufficient evidence to show that Thompson violated Rule 1.6.
 

 II. Whether an attorney-client relationship existed between Thompson and McGaughy.
 

 ¶ 22. The complaint tribunal found that Thompson had not violated Rules 1.2(a) or 1.3 because no attorney-client relationship existed between Thompson and McGau-ghy. The Bar contends that Tubwell, acting as an agent for Thompson, communicated Thompson’s consent to act as McGaughy’s lawyer, and that Thompson should have known of McGaughy’s reliance.
 

 ¶ 23. Rule 1.2(a) provides that a lawyer shall abide by a client’s decisions concerning the objectives of representation and shall consult with the client as to the means by which they are pursued. M.R.P.C. 1.2(a). Rule 1.3 requires a lawyer to act with reasonable diligence and promptness in representing a client. M.R.C.P. 1.3. For either rule to be implicated, an attorney-client relationship must exist.
 

 ¶ 24. The existence of an attorney-client relationship depends upon the circumstances and may be a question of fact. M.R.P.C., SCOPE. The Restatement (Third) of the Law Governing Lawyers, Section 14, (2000), states, in pertinent part, that:
 

 A relationship of client and lawyer arises when:
 

 (1) a person manifests to a lawyer the person’s intent that the lawyer provide legal services for the person; and either
 

 (a) the lawyer manifests to the person consent to do so; or
 

 (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services....
 

 Restatement (Third) of the Law Governing Lawyers § 14 (2000). A lawyer’s consent to represent a client need not be made by the lawyer himself. “An agent for the lawyer may communicate consent, for example, a secretary or paralegal with express, implied, or apparent authority to act
 
 *336
 
 for the lawyer in undertaking a representation.” Restatement (Third) of the Law Governing Lawyers § 14 cmt. e (2000).
 

 ¶ 25. Thompson hired Tubwell to do legal research and draft briefs. He was told not to independently communicate with clients. Thus, Tubwell lacked express authority to communicate Thompson’s consent to represent a client. Tub-well also lacked implied authority because communicating Thompson’s consent to represent a client was not “necessary, proper, and usual,” in the exercise of his express duties.
 
 Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc.,
 
 928 So.2d 856, 864 (Miss.2006) (emphasis removed) (citing
 
 Bolus v. United Penn. Bank,
 
 363 Pa.Super. 247, 259, 525 A.2d 1215, 1221 (1987), alloc, denied, 518 Pa. 627, 541 A.2d 1138 (1988)).
 

 ¶ 26. Apparent authority is “authority that the principal has by words or conduct held the alleged agent out as having.”
 
 Patriot Commercial Leasing Co.,
 
 928 So.2d at 864 (citing
 
 Bolus,
 
 525 A.2d at 1221). Apparent authority requires “(1) acts or conduct of the principal indicating the agent’s authority, (2) reasonable reliance on those acts, and (3) detrimental change in position as a result of reliance.”
 
 Christian Methodist Episcopal Church v. S & S Constr. Co., Inc.,
 
 615 So.2d 568, 573 (Miss.1993) (citing
 
 Andrew Jackson Life Ins. Co. v. Williams,
 
 566 So.2d 1172, 1181 (Miss.1990)). A principal is “bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have.”
 
 Christian Methodist Episcopal Church,
 
 615 So.2d at 573.
 

 ¶ 27. The Bar cites
 
 De Vaux v. American Home Assurance Co.,
 
 387 Mass. 814, 444 N.E.2d 355 (1983), for support. In
 
 De Vaux,
 
 an individual called the attorney’s office seeking legal advice.
 
 De Vaux,
 
 387 Mass, at 816, 444 N.E.2d 355. The attorney’s secretary returned this person’s phone call and rendered some legal advice, arranged for a medical examination, and instructed the person to write a letter requesting the attorney’s assistance.
 
 Id.
 
 This person delivered a letter to the attorney’s office, but the secretary misfiled the letter.
 
 Id.
 
 As a result, the attorney failed to discover the letter until after the statute of limitations had expired.
 
 Id.
 
 at 816-17, 444 N.E.2d 355. The person then filed a malpractice suit against the attorney based, in part, on a theory that the secretary had apparent authority to establish an attorney-client relationship on behalf of the attorney.
 
 Id.
 
 at 819, 444 N.E.2d 355. The plaintiff claimed that the attorney had placed the secretary in a position in which prospective clients might reasonably believe that she had the authority to establish an attorney-client relationship.
 
 Id.
 
 The Supreme Judicial Court of Massachusetts held that “[i]t is a question for the jury whether the attorney allowed his secretary to act as she did, and whether he knew what she was doing.”
 
 Id.
 
 at 820, 444 N.E.2d 355.
 

 ¶ 28. Thompson stated that Tubwell had not been given authority independently to communicate with clients and had been instructed not to sign any letters. She told Tubwell that any cases he worked on had to come through her office. Thompson included Tubwell’s name on the law firm letterhead, but identified him as a paralegal. Furthermore, she disclaimed any knowledge of Tubwell’s correspondence with McGaughy or his work on McGaugh/s ease.
 

 ¶29. We find insufficient evidence to support that Thompson, by her words, actions, or conduct, indicated that Tubwell had authority to communicate her consent to undertake the representation of a client.
 
 *337
 
 We also find that no attorney-client relationship was established by Thompson’s failure to communicate her lack of consent to represent McGaughy. Thompson had no knowledge of McGaughy’s case or Tub-well’s correspondence with McGaughy, and therefore, could not reasonably have known about McGaughy’s reliance on her services.
 

 ¶ 30. Because no attorney-client relationship existed, we find that Thompson did not violate Rules 1.2(a) and 1.3.
 

 III. Whether Thompson failed to properly supervise a non-lawyer assistant and/or assisted a non-lawyer in the unauthorized practice of law.
 

 A. Rule 5.3: Responsibilities Regarding Non-Lawyer Assistants.
 

 ¶ 31. The complaint tribunal found that Thompson had violated Rule 5.3 by failing to implement adequate safeguards to give reasonable assurance that Tubwell’s conduct complied with the professional obligations of a lawyer. The tribunal concluded that Thompson’s lack of supervision had permitted Tubwell to engage in the unauthorized practice of law.
 
 [10]
 

 ¶32. Rule 5.3 provides .that a lawyer with managerial authority in a law firm “shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the [non-lawyer’s] conduct is compatible with the professional obligations of the lawyer.... ” M.R.P.C. 5.3.
 

 ¶ 33. Thompson testified that she had total control of the firm’s post office box and that she reviewed all mail that came into the firm, including any letters addressed to Tubwell. McGaughy stated that every letter he wrote to Tubwell was addressed to the Thompson Law Firm in Tunica. While it is unclear from the record exactly how many letters McGaughy sent to Tubwell, six letters from Tubwell to McGaughy acknowledged, either directly or implicitly,
 
 [11]
 
 the receipt of an earlier letter from McGaughy. Nevertheless, Thompson said she could not recall seeing any letters from McGaughy.
 

 ¶ 34. While Thompson set forth some general instructions and procedures, she admitted that she had not done enough. When asked what steps she had put into place to ensure that Tubwell was not independently working on cases that he had handled while in prison, Thompson answered:
 
 *338
 
 Furthermore, while she knew about Tub-well’s armed robbery conviction at the time she hired him, she was unaware of his prior conviction for forgery until she read his deposition in this matter.
 

 
 *337
 
 Other than trusting him and, you know, telling him that any cases that, you know, we have, any cases that you have that you’re working on, its got to come through my office.... And, you know, had I — I guess had the foresight or just had — had didn’t give me any reason to distrust him. You know, I wouldn’t have — you know, I would have put other, I guess, precautions in place.
 

 
 *338
 
 ¶ 35. We find that Thompson violated Rule 5.3 by failing to make sufficient efforts to supervise Tubwell’s work. This is especially true in light of Tubwell’s criminal past and Thompson’s awareness of the fact that Tubwell might have continued to work on cases from his earlier days as a writ writer. While Thompson’s ill-advised choice of an untrustworthy paralegal may bear upon the degree to which she could foresee Tubwell’s actions, it does not excuse her violation of the rules of professional conduct.
 
 In re Complaint of Jones,
 
 308 Or. 306, 311, 779 P.2d 1016 (1989).
 

 B. Rule 5.5(b): Unauthorized Practice of Law.
 

 ¶ 36. The complaint tribunal held that there was insufficient evidence to find that Tubwell had violated Rule 5.5(b). The tribunal determined that there was not enough evidence to show that Thompson knew or should have known that Tub-well was holding out himself or her firm as attorneys for McGaughy. The Bar, however, asserts that a lawyer can assist a non-lawyer in the unauthorized practice of law by giving him all the necessary resources to practice law, and then failing to supervise him.
 

 ¶ 37. Rule 5.5(b) prohibits a lawyer from assisting a non-lawyer in the unauthorized practice of law. M.R.P.C. 5.5(b). While a lawyer may employ paralegals and delegate duties to them, the lawyer must supervise the delegated work and retain responsibility for it. M.R.P.C. 5.5, cmt.
 

 ¶ 38. The Bar cites
 
 In Re Gaff,
 
 272 Ga. 7, 524 S.E.2d 728 (2000), to support its argument that a Rule 5.5 violation can occur as a result of a lawyer’s failure to supervise. In
 
 In Re Gaff,
 
 Gaff opened a second law office in another town and allowed a disbarred attorney, Ellis, to work there unsupervised as a paralegal.
 
 Gaff,
 
 524 S.E.2d. at 728. Gaff failed to implement procedures to insure that Ellis did not have contact with Gaffs clients.
 
 Id.
 
 Ellis engaged in forgery, theft, and met with and assisted clients on his own.
 
 Id.
 
 at 729. The Supreme Court of Georgia held that Gaff had assisted Ellis in the unauthorized practice of law by failing to supervise him and failing to establish precautionary policies and procedures.
 
 Id.
 
 at 729.
 

 ¶ 39. Other jurisdictions also have found that a lawyer’s failure to supervise a non-lawyer employee constitutes assistance in the unauthorized practice of law.
 
 People v. Smith,
 
 74 P.3d 566, 572 (Col. 2003);
 
 In re Sledge,
 
 859 So.2d 671, 684-86 (La.2003);
 
 In re McMillian,
 
 359 S.C. 52, 59-60, 596 S.E.2d 494 (S.C.2004);
 
 In re Complaint of Jones,
 
 308 Or. at 309-11, 779 P.2d 1016 (1989). Mere warnings or instructions are inadequate unless actual efforts are made to enforce those instructions.
 
 In re Complaint of Jones,
 
 308 Or. at 309-11, 779 P.2d 1016.
 

 ¶ 40. While Tubwell took advantage of his position in Thompson’s firm and engaged in the unauthorized practice of law without her direct knowledge, her failure to supervise and enforce necessary precautions allowed his actions to go unnoticed.
 
 See supra
 
 Part III.A. Accordingly, we find that Thompson assisted Tubwell in the unauthorized practice of law by giving him the position and resources necessary to practice law, and then failing to adequately supervise him. Therefore, we find that Thompson violated Rule 5.5(b).
 

 IV. Whether Thompson violated Rules 8.4(a), (d).
 

 
 *339
 
 ¶41. Rule 8.4(a), (d), provides that it is professional misconduct to violate or to attempt to violate the rules of professional conduct and to engage in conduct that is prejudicial to the administration of justice. M.R.P.C. 8.4(a), (d). Whenever there is a violation of any other rule, there will always be a violation under Rule 8.4.
 
 L.S. v. The Miss. Bar,
 
 649 So.2d 810, 814 (Miss.1994).
 

 ¶ 42. Having found that Thompson violated Rules 1.15, 5.3, and 5.5(b), we necessarily find that she violated Rule 8.4(a) as well. Furthermore, Thompson’s conduct was prejudicial to the administration of justice, because McGaughy was deprived of his right to file a habeas corpus petition and paid for non-existent representation. Therefore, we find that Thompson violated Rule 8.4(a), (d).
 

 Y. Whether a retroactive, one-year suspension is an appropriate sanction, and whether the complaint tribunal erred in failing to consider the nine factors that must be considered when imposing attorney discipline, as set forth in
 
 Liebling v. The Mississippi Bar,
 
 929 So.2d 911, (Miss. 2006).
 

 ¶ 43. In imposing the retroactive, one-year suspension, the complaint tribunal failed to examine the nine factors that are required to be considered in attorney disciplinary matters. Those factors are:
 

 (1) The nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of dignity and reputation of the legal profession; (4) the protection of the public; (5) sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer’s mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating or mitigating factors.
 

 Liebling,
 
 929 So.2d at 918 (quoting
 
 Miss. Bar v. Walls,
 
 890 So.2d 875, 877 (Miss. 2004)).
 

 ¶ 44. In
 
 Liebling,
 
 this Court stated that an analysis of the above factors would be required “in the opinions of all Tribunals which conduct hearings after today’s decision.”
 
 Liebling,
 
 929 So.2d at 918.
 
 Liebling
 
 was handed down on March 23, 2006.
 
 Id.
 
 at 911. The hearing in this matter occurred prior to
 
 Liebling,
 
 but the complaint tribunal’s opinion was not issued until nearly one year after
 
 Liebling,
 
 on March 16, 2007. Under a strict interpretation, this case falls outside of the requirement we imposed in
 
 Liebling.
 
 Yet, even before
 
 Liebling,
 
 we had noted that these nine factors
 
 should
 
 be included in tribunal opinions.
 
 Id.
 
 at 918.
 
 Liebling
 
 further emphasized the importance of considering these factors.
 
 Id.
 
 Given the significance we have continually prescribed to these nine factors, as clearly highlighted by
 
 Lie-bling,
 
 we find that the complaint tribunal erred in failing to analyze the factors.
 

 ¶ 45. The Bar contends that this case merits a harsher penalty than a one-year, retroactive suspension. In determining whether retroactive discipline is appropriate, we find the following factors set forth by the New Jersey Supreme Court to be helpful:
 

 [Wjhether the conduct is part of a continuing pattern or whether there is only a single instance of misconduct; whether there is a significantly attenuated relationship between the misconduct and the practice of law; and whether the passage of time mitigates the severity of the discipline required. The last factor — the remoteness of the misconduct — has two facets. The first is whether the passage of time itself has accomplished rehabilitation of the lawyer. The second is whether the transgressions are so remote in time that
 
 *340
 
 intervening developments and current circumstances dilute the public interest in proper and prompt discipline.
 

 People v. Abelman,
 
 804 P.2d 859, 862 (Colo.1991) (internal citations omitted). Thompson’s conduct reflects a continuing pattern of neglect as to her professional responsibilities. Her neglect ultimately caused severe prejudice to McGaughy. While Thompson acknowledged her wrongdoing and gave some indication that she has learned from her mistakes, the public maintains an interest in proper and prompt discipline.
 
 See Shah v. Miss. Bar,
 
 962 So.2d 514, 525 (Miss.2007) (“The purpose of discipline is not simply to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar misconduct.”) (quoting
 
 Miss. State Bar Ass’n v. A Miss. Attorney,
 
 489 So.2d 1081, 1084 (Miss.1986)). Neither the passage of time nor subsequent developments have lessened such public interest in this case.
 

 ¶ 46. The delay of disciplinary proceedings is a mitigating circumstance to be considered when determining sanctions.
 
 See Clark v. Miss. State Bar Ass’n,
 
 471 So.2d 352, 357 (Miss.1985) (citing 93 A.L.R. 3rd 1057, 1091 (1979)). But after considering the aforementioned factors and the prejudice resulting to McGaughy, we find that a one-year, retroactive suspension is insufficient. Nevertheless, we must await an examination of the
 
 Liebling
 
 factors before imposing any sanction(s).
 
 [12]
 

 CONCLUSION
 

 ¶ 47. We affirm the complaint tribunal with regard to its finding that Thompson violated Rules 1.15, 5.3, and 8.4(a), (d). We find that Thompson also violated Rule 5.5(b), and therefore, reverse the complaint tribunal’s finding as to that issue. Because the complaint tribunal failed to consider the nine
 
 Liebling
 
 factors, we reverse the one-year, retroactive suspension and remand this case to the tribunal for consideration of the appropriate sanction(s) in light of these factors.
 

 ¶ 48. AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.
 

 SMITH, C.J., DIAZ, P.J., CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Gail Thompson was admitted to practice in the State of Mississippi in April 1990.
 

 [2]
 

 . Tubwell was convicted for armed robbery and false pretense.
 

 [3]
 

 . Thompson did not have printed letterhead. Instead, she made her own computer-generated letterhead.
 

 [4]
 

 . Despite Tubwell's request that McGaughy send future correspondence to the Southaven address, McGaughy testified that he sent all of his letters to the Thompson Law Firm.
 

 [5]
 

 . In a letter to McGaughy dated January 3, 2003, Tubwell acknowledged receiving a money order from McGaughy's father. However, it is not clear whether this money order represented the fifty dollars or the $500 amount.
 

 [6]
 

 . In its opinion, the complaint tribunal found that “[McGaughy] was also prejudiced in that his family was duped into paying for non[]existent representation.”
 

 [7]
 

 . While working as a writ writer at Parch-man, Tubwell had designed a general form that inmates could fill in and use to file a pro se petition for post-conviction relief. Tubwell claims that he sent McGaughy only the court records and a copy of the form itself. However, McGaughy testified that the petition already had been prepared when he received it.
 

 [8]
 

 . Thompson was suspended from the practice of law for mishandling client funds in her trust account. Mississippi Supreme Court Cause Number 2002-B-645.
 

 [9]
 

 . The complaint tribunal made the suspension effective from the date of her hearing. Thus, her suspension ended two days prior to the entry of the complaint tribunal’s order.
 

 [10]
 

 . "The practice of law includes the drafting or selection of documents, the giving of advice in regard to them, and the using of an informed or trained discretion in the drafting of documents to meet the needs of the person being served. So any exercise of intelligent choice in advising another of his legal rights and duties brings the activity within the practice of the legal profession.”
 
 Darby v. Miss. State Bd. of Bar Admissions,
 
 185 So.2d 684, 687 (Miss. 1966) (citing
 
 Oregon State Bar v. Security Escrows, Inc.,
 
 233 Or. 80, 377 P.2d 334 (1962)).
 

 [11]
 

 . In five letters, Tubwell expressly acknowledged the receipt of a letter from McGaughy and was writing in response to those letters. Tubwell's initial letter to McGaughy, dated January 4, 2002, did not acknowledge receipt of an earlier letter from McGaughy. However, McGaughy testified that he wrote Tubwell prior to the January 4, 2002, letter.
 

 [12]
 

 . The record indicates that Thompson has a history of disciplinary violations. In addition to her aforementioned eighteen-month suspension for mishandling client funds in 2003/ Thompson was privately reprimanded in 1997 and 2002, and publicly reprimanded in 2002. Thompson's prior disciplinary conduct should be considered as an aggravating factor on remand.