929 So.2d 911 (2006)
Franklin B. LIEBLING
v.
THE MISSISSIPPI BAR.
No. 2004-BA-01565-SCT.
Supreme Court of Mississippi.
March 23, 2006.
*913 Victor Israel Fleitas, Tupelo, attorney for appellant.
Adam Bradley Kilgore, Jackson, attorney for appellee.
EN BANC.
RANDOLPH, Justice, for the Court.

STATEMENT OF THE CASE
¶ 1. This case stems from an Informal Bar Complaint filed by Cori Stewart ("Cori") against attorney Franklin Liebling ("Liebling"). After receiving and investigating Cori's Complaint, the Office of General Counsel for the Mississippi Bar ("Bar") scheduled an investigatory hearing. An investigatory hearing was held on January 28, 2003, and Liebling did not *914 attend. The Office of General Counsel for the Bar found Liebling had violated Rules 8.1(b) and 8.4(a), (c), and (d) of the Mississippi Rules of Professional Conduct and that discipline should be imposed for these violations.[1]
¶ 2. On May 12, 2003, the Mississippi Bar filed a Formal Complaint against Liebling. The filing of the Formal Complaint was pursuant to Liebling's request that a formal disciplinary proceeding be initiated against him to adjudicate the propriety of his alleged misconduct. This complaint alleged Liebling: 1) violated Rule 8.1(b) of the Mississippi Rules of Professional Conduct by failing to attend an investigatory hearing; and 2) violated Rule 8.4(a), (c), and (d) of the Mississippi Rules of Professional Conduct by "guaranteeing on three separate occasions that he would be able to effectuate the release of Cori by a certain date."
¶ 3. A trial was held before the Complaint Tribunal ("Tribunal") on June 29, 2004. With respect to Liebling's alleged violation of M.R.P.C. 8.1, the Tribunal granted Liebling's Motion for Directed Verdict. In granting this motion, the Tribunal cited Rule 5.7 of the Rules of Discipline for the Mississippi Bar, which states, "[t]he accused attorney may appear at any investigatory hearing conducted by complaint counsel." The Tribunal stated it did not condone Liebling's failure to appear at the investigatory hearing. However, it did not find that Liebling failed to respond to any request for information from the Committee on Professional Responsibility; and therefore, Liebling did not violate M.R.P.C. 8.1. With respect to Liebling's alleged violation of M.R.P.C. 8.4(a), (c) and (d), the Tribunal found Liebling's conduct violated M.R.P.C. 8.4(a) and (c). The Tribunal did not address M.R.P.C. 8.4(d) in its opinion and judgment.
¶ 4. The Tribunal also found Liebling had been the subject of prior Bar complaints, resulting in one Private Reprimand and one Informal Admonition. In Miss. State Bar v. A Miss. Attorney, 489 So.2d 1081 (Miss.1986), Liebling received a Private Reprimand for charging an excessive fee for the drafting of a will. Liebling received an Informal Admonition for violating M.R.P.C. 1.2(a), 1.3 and 1.4.[2] The *915 Tribunal found Liebling's conduct constituted unprofessional and unethical conduct under M.R.P.C. 8.4(a) and (c), and issued Liebling a Public Reprimand.
¶ 5. Liebling timely filed his Notice of Appeal on August 6, 2004, and brings the following issues for appeal: 1) whether the Tribunal erred in failing to admit Exhibit D-2; 2) whether the Petitioner failed to establish a violation of Rule 8.4 by clear and convincing evidence; and 3) whether the Tribunal erred in imposing a public reprimand on Liebling.

STANDARD OF REVIEW
¶ 6. Under Mississippi Rule of Discipline 1(a), this Court has exclusive and inherent jurisdiction of matters pertaining to attorney discipline. This Court, when reviewing disciplinary matters, "reviews the evidence de novo, on a case-by-case basis, sitting as triers of fact, and no substantial evidence or manifest error rule shields the Tribunal from scrutiny." Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 564 (Miss.1987). See also Hoffman v. Miss. State Bar Ass'n, 508 So.2d 1120, 1124 (Miss.1987); Vining v. Miss. State Bar Ass'n, 508 So.2d 1047, 1049 (Miss. 1987); St. Bd. of Psychological Ex. v. Hosford, 508 So.2d 1049, 1054 n. 4 (Miss.1987). However, this Court may grant deference to the Tribunal "due to its exclusive opportunity to observe the witnesses, including the attorney, which is vital in weighing evidence." The Miss. Bar v. Logan, 726 So.2d 170, 175 (Miss.1999) (quoting Parrish v. The Miss. Bar, 691 So.2d 904, 906 (Miss.1996)).

STATEMENT OF THE FACTS
¶ 7. William Stewart ("Stewart"), Cori's father, testified in 1995, Cori entered prison to serve a sentence of twenty years after pleading guilty to six counts of possession and sale of marijuana.[3] During his incarceration, Cori received information from another inmate that hiring Liebling as his attorney might help to get Cori's sentence reduced. Cori communicated this information to his father, and Stewart contacted Liebling in February, 1999.
¶ 8. Stewart testified that at their initial meeting, Liebling assured Stewart that Cori would not need a sentence reduction, but that Liebling could get Cori out early. Liebling stated that because Cori was a first time offender and that he was "misrepresented in court because he had an assigned lawyer," he would be able to get Cori out, if Stewart paid Liebling $5,000. Stewart was to pay a first time fee of $1,500 and pay the rest in installments. Stewart stated he paid $400 to $500 every two weeks. After Stewart made the initial $1,500 payment by check, Liebling requested he be paid only in cash. Stewart paid the remainder in cash.
¶ 9. Stewart testified after he hired Liebling and paid $1,500, he met with Liebling once every two weeks, sometimes once a week, and it was at these meetings that Liebling suggested the three dates on which Cori would be out of prison. Stewart testified Liebling said he could have Cori home by Father's Day of 1999. After Father's Day had passed, Stewart stated Liebling told him "he'd run into some trouble" getting Cori out and that he would have Cori home by Christmas of 1999.
¶ 10. By Christmas of 1999, Stewart had paid Liebling the full $5,000, but Cori was still in prison. Stewart testified after Christmas, Liebling requested an additional $500 in order to have Cori home by January 25, 2000, which was Cori's birthday. Stewart paid Liebling an additional $400, not being able to afford the last $100.
*916 ¶ 11. When Cori was not released by January 25, 2000, Stewart requested Cori's file and terminated representation by Liebling. Cori remained in prison until the summer of 2003. Stewart testified that Cori's sentence was reduced by one year due to good behavior.
¶ 12. Liebling testified he made no such assurances of dates on which Cori might be released, and separately submitted an affidavit swearing he did not make any representations that Cori could be released, or that he could even get Cori a reduction in his sentence. Liebling testified his only representation to Stewart was that he "would exert my best professional efforts on his behalf."

ANALYSIS

I. Whether the Complaint Tribunal erred in failing to admit Exhibit D-2
¶ 13. Exhibit D-2 contained three letters written by Cori to Liebling. Liebling sought to have these letters entered to support a recent fabrication theory. Cori had written these letters from prison. In these letters, Cori made no reference to getting out of prison by a certain date. The Tribunal ruled these letters were to be marked for identification purposes only.
¶ 14. The Bar objected to these letters being entered into evidence asserting these were being offered to prove a negative and also lacked relevancy. Liebling responded the letters were being offered to establish recent fabrication, to prove "our claim that the allegations made by these folks in 2002 are rebutted by the fact that letters in 2000 and 2001 make no mention of the fact that they had these complaints with respect to Mr. Liebling."
¶ 15. After the Bar registered its objections, counsel for Liebling was questioned extensively by the Tribunal regarding the admissibility of these documents. Even though the Bar made general, albeit incorrect, objections, the Tribunal ruled the letters to be inadmissible. The Tribunal's questions centered upon language found in 801(d)(1)(B) of the Mississippi Rules of Evidence.
¶ 16. M.R.E. 801(d)(1)(B) states: "[a] statement is not hearsay if: The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with his testimony and is offered to rebut an express or implied charge of recent fabrication or improper influence or motive. . . ."
¶ 17. In this matter, the declarant was Cori. Cori was neither present at the hearing, nor was he subpoenaed by either party. Stewart testified that Cori was out of prison and maintained a job and apartment. Cori was not available to be examined by either party regarding these letters. Accordingly, the Tribunal found the letters to be inadmissible. The Tribunal was correct in its finding, as these letters constitute hearsay, under M.R.E. 801(d)(1)(B). The Tribunal did not err in excluding these letters.

II. Whether the Petitioner failed to establish a violation of Rule 8.4 by clear and convincing evidence.
¶ 18. "The burden is on the Bar to show by clear and convincing evidence that an attorney's actions constitute professional misconduct." Attorney W.L. v. The Miss. Bar, 621 So.2d 235, 237 (Miss. 1993) (citations omitted). "Certainly, when it is performing its important duties, the Complaint Tribunal should employ the clear and convincing evidence standard." Levi v. Miss. State Bar, 436 So.2d 781, 784 (Miss.1983).
¶ 19. Liebling claims Cori is using the complaint process "as a mechanism to force Mr. Liebling to refund the fee he *917 earned in this matter." Liebling further claims the allegation of promises of when Cori would be home was suspect because there was no mention of these alleged promises in the correspondence from Cori to Liebling, which was not admitted into evidence. However, Stewart claimed there is no mention of specific dates in the non-admitted correspondence from Cori, because Stewart did not inform his son of Liebling's promises. Stewart testified Liebling told him not to tell Cori that he was going to get him out "because they would make things harder from him in prison, somebody thinking he's fixing to get out." However, a letter from prison dated August 26, 2002, by Cori to Liebling, which mentioned the three promised release dates, was offered into evidence by Liebling. Liebling argues this letter was admitted to show that Cori's first mention of the promised release dates was made in a letter written two years after the promises by Liebling were alleged to have been made. Liebling offered this letter as proof of recent fabrication, since Cori only mentioned the release dates shortly before the informal Bar Complaint was filed.[4] Stewart's testimony countered this by again stating that he had not previously told Cori of the release dates, so as not to make it harder for him among the other prisoners.
¶ 20. The dissenting opinion characterizes the proceeding as "using the bar complaint to collect a refund of the money paid to Liebling." This accusation was refuted by Stewart in his testimony.
¶ 21. The Tribunal, sitting as fact finder, was presented with conflicting testimony and rendered its decision. "We give deference to findings of the Tribunal due to its exclusive opportunity to observe the demeanor and attitude of witnesses, including the attorney." Parrish v. The Miss. Bar, 691 So.2d 904, 906 (Miss.1996). This Court grants deference to the Tribunal, especially if the evidence is conflicting, but at the same time must satisfy itself that the fact finder has followed proper procedure, as well as imposed a sanction in line with precedent cases. "This Court may accept or reject the evidence presented in whole or in part, although deference may be given to the findings of the Complaint Tribunal because it has the best opportunity to observe the witnesses." Stegall v. The Miss. Bar, 618 So.2d 1291, 1294 (Miss.1993). The dissent criticizes the Tribunal for "giving more weight to the testimony of Stewart than that of Liebling" and ignoring the testimony of Liebling's character witnesses. The number of witnesses who testify cannot be the deciding factor in a disputed case. "[T]he strength or weakness of testimony is not measured by the number of witnesses appearing for the respective sides of lawsuits." Spiers v. State, 231 Miss. 307, 94 So.2d 803, 806 (1957). See also Sturdivant v. State, 745 So.2d 240, 248 (Miss.1999); Kirkland v. Chinita Land Dev., Inc., 798 So.2d 620, 623 (Miss.Ct.App.2001). As in Stegall, the Tribunal was in the best position to observe these proceedings, and to determine the relevance and weight to be accorded to the testimony offered by the parties and the witnesses they called.
¶ 22. The Tribunal resolved conflicting evidence regarding the heart of this dispute, of which none of the character witnesses had personal knowledge, and rendered its decision accordingly. In its opinion, the Tribunal stated, "[we] find by clear and convincing evidence that Mr. Leibling's conduct violates certain Rules of Professional Conduct . . . said being, Rule 8.4(a) and (c)." After thorough review of *918 the record, this Court finds no evidence to suggest the Tribunal erred in its finding.

III. Whether the Complaint Tribunal erred in imposing a Public Reprimand on Mr. Liebling
¶ 23. Sanctions are imposed based on the following factors:
(1) The nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of dignity and reputation of the legal profession; (4) the protection of the public; (5) sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer's mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating or mitigating factors.
Miss. Bar v. Walls, 890 So.2d 875, 877 (Miss.2004) (quoting Miss. Bar v. Inserra, 855 So.2d 447, 450 (Miss.2003)).
¶ 24. In attorney disciplinary matters, the Tribunal is required to examine the aforementioned factors. This Court has previously stated (perhaps not as clearly as we believed), that the Tribunal should include its analysis of these factors in its opinions and judgments. While this does not turn on this oversight, this Court will require such inclusion in the opinions of all Tribunals which conduct hearings after today's decision.
¶ 25. Based upon the record, this Court examines the nine factors necessary to impose a sanction against an attorney in a disciplinary action.
(1) The nature of the misconduct involved: Liebling argues that the nature of the misconduct involved "constitutes a highly questionable claim that a seasoned practitioner made three promises regarding specific dates of when a prisoner would receive early release and this factor supports a lesser sanction than that imposed by the Complaint Tribunal." The Bar argues the imposition of a Public Reprimand is appropriate as Liebling violated his duty of candor by guaranteeing Cori's early release and accepting $5,400 to accomplish the same. The Bar argues the Tribunal was correct in sanctioning Liebling after the Tribunal considered Liebling's misrepresentation along with his two previous violations.
¶ 26. In its Opinion, the Tribunal stated, "[b]ased upon clear and convincing evidence, it is the opinion of the Tribunal that Mr. Liebling has demonstrated unprofessional and unethical conduct involving misrepresentation by guaranteeing on three separate occasions that he would be able to effectuate the early release of Cori by a certain date, guarantees which he knew or should have known that he could not make."
¶ 27. The nature of the conduct involved in this case is a false guarantee. Liebling did not have the authority to guarantee the date of Cori's release, nor should he have promised such for $5,400. This Court has held, "dishonest conduct by an attorney with his own client goes to the very core of a lawyer's fitness to practice law." Id. at 512. (quoting Reid v. The Miss. Bar, 586 So.2d 786, 788 (Miss.1991)).
(2) The need to deter similar misconduct: Liebling was not forthright with Stewart about his ability to have Cori released from prison. When a client is misled by his attorney, the need to deter similar misconduct is great. Liebling has previously received not only a Private Reprimand for charging an excessive fee for a will, but an Informal Admonition for violating M.R.P.C. 1.2(a), 1.3 and 1.4. The dissent states these previous violations are not similar in nature to the violation now charged. However, the rules Liebling have been accused of violating are rules regarding his relationship and diligence *919 towards a client. "The failure to follow the Rules involving duties to clients, which [Attorney] has violated, involve the most important ethical standards this profession espouses." Stegall, 618 So.2d at 1294.
(3) The preservation of the dignity and reputation of the profession: The sanctions imposed by the Tribunal should be upheld in order to preserve the dignity and reputation of the legal profession. "The legal profession today is under an extreme amount of pressure. It is constantly being scrutinized by the public. Public policy demands that we adequately discipline unethical attorneys to preserve the dignity and reputation of the legal profession." Emil v. The Miss. Bar, 690 So.2d 301, 327 (Miss.1997). As this is Liebling's third ethical violation, this factor warrants the sanctions imposed by the Tribunal.
(4) The protection of the public: Liebling argues that protection of the public may be achieved through a lesser sanction. This Court has repeatedly held that the public needs protection from attorneys who are not honest with their clients. See Carter v. The Miss. Bar, 654 So.2d 505, 512 (Miss.1995). Liebling should not have guaranteed, for the sum of $5,400 that he could have Cori released from prison. There is a need to protect clients from false promises knowingly made by their attorneys. "[T]he purpose of bar disciplinary proceedings is not to punish the respondent lawyer but to vindicate in the eyes of the public the overall reputation of the bar." Levi, 436 So.2d at 786.
(5) The sanctions imposed in similar cases: "[T]he public's confidence and faith in the integrity of the entire Bar is dependent upon our willingness to impose appropriate sanctions on our members who have violated the Code of Professional Responsibility." Pitts v. Miss. State Bar Assoc., 462 So.2d 340, 343 (Miss.1985). Liebling argues if any sanction in this matter is necessary, the Public Reprimand should be reduced to lesser discipline.
¶ 28. This Court has held, "[d]eceit, whether visited on a court or an officer of the court or a private citizen, should be dealt with in a firm manner." Robb, 684 So.2d at 622. Considering Liebling's present violation, with his previous violations, the Tribunal found the imposition of a Public Reprimand to be appropriate. In Foote v. Miss. State Bar Assoc., 517 So.2d 561, 564 (Miss.1987), this Court held, "[t]his Court will not hesitate to impose substantial sanctions upon an attorney for any act which evinces want of personal honesty and integrity or renders such attorney unworthy of public confidence."
¶ 29. In Alexander v. The Miss. Bar, 651 So.2d 541, 547 (Miss.1995), this Court issued a Public Reprimand for an attorney's failure to communicate with clients and to bring matters to trial. In Miss. Bar v. Mathis, 620 So.2d 1213 (Miss.1993), this Court set aside a Public Reprimand and issued a one year suspension where it was found an attorney was dishonest with his client, opposing counsel and the court. In Stegall v. The Miss. Bar, 618 So.2d 1291, 1296 (Miss.1993), this Court disbarred an attorney who, after receiving two private reprimands and two informal admonitions, continued to fail to keep his clients informed, misrepresented his explanation of services and failed to return property and render an accounting of funds. This Court found Stegall failed to learn any lesson from his previous sanctions. Id. Liebling has been the subject of an Informal Admonition and a Private Reprimand, and has now been found in violation of M.R.P.C. 8.4(a) and (c). The sanction imposed by the Tribunal is proportionate to sanctions imposed in similar cases.
*920 (6) The duty violated: The Tribunal found Liebling violated portions of M.R.P.C. 8.4, which governs professional misconduct. Liebling's guarantee that, for a fee, he would have Cori out of prison by a certain date, demonstrated unprofessional and unethical conduct involving misrepresentation.
(7) The lawyer's mental state: Liebling's mental state is not at issue in this case and therefore, is not considered by this Court.
(8) Actual or potential injury resulting from misconduct: In addition to William Stewart losing $5,400, Liebling's guarantee to the Stewarts to obtain an early release was not fulfilled.
(9) The existence of aggravating or mitigating factors: The existence of aggravating and mitigating factors has been discussed supra. When examining these factors, this Court finds Liebling's multiple violations outweigh the mitigating factors Liebling presented. In Carter v. Miss. Bar, 654 So.2d 505, 513 (Miss.1995), this Court held, "a pattern of misconduct, and multiple offenses are aggravating circumstances." See also Harrison v. Miss. Bar, 637 So.2d 204 (Miss.1994).

CONCLUSION
¶ 30. "Upon appeal, the Court shall review the entire record and the findings and conclusions of the tribunal, and shall render such orders as the Court may find appropriate." Foote, 517 So.2d at 564. This Court has further held,
It may well be that the Complaint Tribunal obtained valuable insights by its personal observation of the appearance and demeanor of the witnesses. And, to be sure, in the exercise of our sound discretion we are by no means prohibited from giving to findings of fact made by the Tribunal such weight as in our judgment they may deserve. This we may do so long as we do not lose sight of the fact that, as a matter of law, it is our non-delegable duty and responsibility to make findings of fact in cases such as this.

Levi, 436 So.2d at 783.
¶ 31. As to Issue I, the Tribunal did not err in excluding Exhibit D-2. The letters included in Exhibit D-2 constituted hearsay and were not admissible under M.R.E. 801(d)(1)(B).
¶ 32. As to Issue II, the Bar established by clear and convincing evidence that Liebling violated M.R.P.C. 8.4(a) and (c).
¶ 33. As to Issue III, the Tribunal did not err in imposing a Public Reprimand on Liebling. The Tribunal took into consideration Liebling's most recent violation, and his previous violations when issuing a sanction. It is the opinion of this Court that the Tribunal issued an appropriate sanction.
¶ 34. There being no error in the findings of the Tribunal, this Court affirms their findings and punishment, and orders that a Public Reprimand be issued to Liebling.
¶ 35. FRANKLIN B. LIEBLING SHALL BE PUBLICLY REPRIMANDED.
SMITH, C.J., WALLER AND COBB, P.JJ., AND DICKINSON, J., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITH WRITTEN OPINION. DIAZ AND CARLSON, JJ., NOT PARTICIPATING.
EASLEY, Justice, Dissenting:
¶ 36. I must respectfully dissent from the majority's imposition of a public reprimand against Liebling. While the alleged accusations are serious and not taken lightly, I must disagree with the majority's *921 imposition of a public reprimand against Liebling for the reasons stated below.[5]
¶ 37. The majority is correct as to the authority provided in its analysis, but I find that authority does not support the majority's holding. The majority finds the Complaint Tribunal employed a clear and convincing standard in reviewing the evidence to determine that Liebling committed unprofessional conduct in violation of M.R.P.C. 8.4(a) and (c). Accordingly, the majority provides deference to the Tribunal's findings to determine the Bar has met its burden of establishing Liebling's misconduct by clear and convincing evidence.
¶ 38. The majority states Liebling's two prior sanctions and appears to make much of these prior sanctions in its reasoning to support a public reprimand in this case. The majority provides:
[T]he Tribunal further found Liebling had been the subject of prior disciplinary action in the form of one Private Reprimand and one Informal Admonition. In Miss. State Bar v. A Miss. Attorney, 489 So.2d 1081 (Miss.1986), Liebling received a Private Reprimand for charging an excessive fee for the drafting of a will. Liebling received an Informal Admonition for violating M.R.P.C. 1.2(a), 1.3 and 1.4.
However, these prior sanctions, which resulted in a private reprimand and an informal admonishment, were not demonstrated to have been similar in nature to the alleged violations now charged. Likewise, the prior matters do not appear to have any allegations of misrepresentation of facts in order to generate a fee.
¶ 39. The only evidence presented to the Tribunal regarding any alleged misconduct was the testimony of Stewart and Liebling. Stewart testified that Liebling assured him that he could get Cori released from prison by a certain, specific date. Liebling, however, testified to the contrary. Liebling testified that he never made any assurances regarding any specific dates of release from prison. Liebling testified that he only assured Stewart that he would exert his best efforts on Cori's behalf. Liebling also provided an affidavit that he did not make any representations that Cori would be released from prison by a certain date or that Cori could be released from prison. Liebling contends the complaint process was used by Stewart to seek a refund.
¶ 40. The testimony of Stewart is questionable and self-serving. The evidence shows that Stewart used the bar complaint to collect a refund of the money paid to Liebling. The letter from Stewart to Liebling dated July 29, 2002, threatened to file a complaint with the Bar if Liebling did not give him a refund. See Exhibit D-4. The letter stated, "I will want my money back, or I will file a complaint with the Bar Association." Stewart's threat against Liebling to file a bar complaint if he did not get a refund, goes directly to Stewart's credibility to now allege that "promises" were made regarding Cori's release. The substance of Stewart's complaint was that he was entitled to a refund. The Bar should have handled this matter as a fee dispute regarding the refund.
¶ 41. The record does not provide that any written documentation or taped recordings or any other evidence existed to substantiate the allegations. Neither the Bar nor Liebling subpoenaed Cori, who *922 was released from prison by this time, to appear at the Tribunal.
¶ 42. Furthermore, the credibility of Liebling's testimony was strengthened by character witnesses called to testify at the Tribunal, namely the Honorable David Chandler, Mississippi Court of Appeals Judge and Leon Hayes, Deputy Sheriff of Monroe County and former Sheriff of Itawamba County.
¶ 43. "The Supreme Court of Mississippi has exclusive and inherent jurisdiction in bar disciplinary matters." Mississippi Bar v. Pels, 708 So.2d 1372, 1373 (Miss. 1998). See also R. Discipline Miss. State Bar 1(a). In performing its duties and rendering its findings, the Tribunal employs the clear and convincing standard of evidence. Levi v. Miss. State Bar, 436 So.2d 781, 784 (Miss.1983). Likewise, the Bar bears the burden of demonstrating by clear and convincing evidence that an attorney's actions constituted misconduct. Attorney W.L. v. The Miss. Bar, 621 So.2d 235, 237 (Miss.1993).
¶ 44. This Court must decide each disciplinary case on its own unique merits. Fougerousse v. Mississippi State Bar Ass'n, 563 So.2d 1363, 1366 (Miss.1990). "On appeal, this Court, `shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate.'" Mississippi Bar v. Sweeney, 849 So.2d 884, 887 (Miss.2003)(quoting Foote v. Miss. State Bar Ass'n, 517 So.2d 561, 564 (Miss.1987)).
¶ 45. As a general rule, this Court provides deference to the findings of the Tribunal in reviewing an attorney's alleged misconduct in disciplinary matters. See Parrish v. The Miss. Bar, 691 So.2d 904, 906 (Miss.1996). However, while deference may be afforded to the Tribunal's findings, this Court employs as the trier of facts in disciplinary matters a de novo review, on a case-by-case basis, of the evidence in the record. Mississippi Bar v. Shelton, 855 So.2d 444, 445 (Miss.2003)(citing Pels, 708 So.2d at 1373); Hoffman v. Miss. State Bar Ass'n, 508 So.2d 1120, 1124 (Miss.1987); see also R. Discipline Miss. State Bar 9.4. Therefore, we are not bound to impose the sanctions or accept the findings determined by the Tribunal. See Shelton, 855 So.2d at 445; Hoffman, 508 So.2d at 1124.
¶ 46. Here, the record does not support by clear and convincing evidence that Liebling did anything improper to constitute a violation of M.R.P.C. 8.4(a) and (c). At best, if the Tribunal accepted Stewart's testimony over Liebling's testimony, this only amounts to a preponderance of the evidence, and not clear and convincing evidence. Liebling's testimony and affidavit contradicted Stewart's testimony. The Bar did not present any documentation or any other evidence to support Stewart's accusations. No other witnesses were called or presented by the Bar. As such, I disagree with the majority finding that any more weight should be applied to the testimony of Stewart than that of Liebling. Therefore, I would reverse the findings of the Tribunal which imposed a public reprimand against Liebling.
NOTES
[1] M.R.P.C. 8.1(b) states: An applicant for admission to the Bar, or a lawyer in connection with a bar application or in connection with a disciplinary matter, shall not: (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except this rule does not require disclosure of information otherwise protected by Rule 1.6.

M.R.P.C. 8.4(a), (c) and (d) state: It is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional misconduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice. . . .
[2] M.R.P.C. 1.2(a) states: A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, a lawyer shall abide the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

M.R.P.C 1.3 states: A lawyer shall act with reasonable diligence and promptness in representing a client.
M.R.P.C. 1.4 states: a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
[3] The briefs of both parties state the sentence was ten years.
[4] The record does not contain the date Cori Stewart filed the complaint.
[5] For clarity, the majority references Stewart as the "client." However, technically Cori was Liebling's client, and Stewart, Cori's father, paid Cori's legal fees to Liebling. Stewart was merely the catalyst that retained Liebling on behalf of Cori. Therefore, the dissent will not refer to Stewart as the client.