LAMAR, Justice,
for the Court:
¶ 1. In this attorney-misconduct case, we must decide whether the two-year suspension imposed on an attorney by the Mississippi Bar Complaint Tribunal (“Tribunal”) is sufficient. Finding that the sanction imposed is sufficient, we affirm the Tribunal’s decision.
FACTS AND PROCEDURAL HISTORY
¶ 2. Allen Derivaux (“Allen”) was admitted to practice law in 1980. His prac *165 tice included mostly title work and loan closings. Prior to 2009, Allen had a title-agency agreement with a title insurance company which allowed him to write and sell title insurance through the company. However, this agreement was terminated in January 2009. Although the agreement was terminated, Allen continued to hold himself out to lenders and third parties as an approved title agent. Allen continued to conduct title work for approximately nine months after his agreement was terminated and engaged in a pattern of forging and fabricating title commitments, title policies, other documents relating to title work, as well as collecting premiums for title insurance for the loan closings he handled. Allen placed the funds he collected into his lawyer trust account.
¶ 3. Eventually, Allen’s activities were discovered and a formal bar complaint was brought against him. The Bar alleged that Allen had violated Rules 1.15(b) and 8.4(a, b, c, d) of the Mississippi Rules of Professional Conduct and sought his disbarment.[1] Allen admitted in his response to the complaint that he had engaged in misconduct by forging title policies and accepting title insurance premiums. The case originally was set for trial on October 25, 2010, but was reset to March 10, 2011, after Allen’s wife unexpectedly passed away on October 24, 2010.
¶ 4. Allen represented himself at the March 10, 2011, hearing. He again admitted that he had engaged in the alleged misconduct, that he knew it was wrong, and stated that he did not know why he did it. Allen testified that he always had intended to find someone else to do the title work for him and to make it right. Allen did not offer any mitigating evidence on his behalf, other than the death of his wife and being left with five children to support and care for on his own. Allen also denied having any health issues. When asked if he thought he should be disbarred, Allen replied that he did not think so because he would not do it again, but that he would accept whatever the Tribunal decided.
¶ 5. After taking the case under advisement, the Tribunal found that Allen had violated Rule 8.4 by engaging in conduct that was patently dishonest, fraudulent and deceitful; that he had violated Rule 8.4(b) by engaging in a criminal act that reflected adversely on his honesty, trustworthiness, and fitness as a lawyer; that he had violated Rule 8.4(d) by engaging in conduct that was prejudicial to the administration of justice; that he had violated Rule 8.4(a) by violating one or more rules of professional conduct; and that he had violated Rule 1.15(b) by receiving funds for issuance of nonexistent title-insurance policies. The Tribunal found that no mitigating factors applied and ordered that Allen be disbarred.
¶ 6. Allen timely filed a motion for reconsideration. Allen argued that there *166 were mitigating circumstances that should be considered and requested a stay of his disbarment pending a hearing or appeal. Approximately twenty practicing members of the Warren County Bar joined in Allen’s motion, arguing that Allen’s actions were out of character for him and likely due to extenuating health, financial, and family circumstances.
¶ 7. On May 23, 2012, the Tribunal held a hearing on Allen’s motion. At this hearing, Allen was represented by former Circuit Judge Frank Vollor. At the hearing, Allen put on testimony from five witnesses, including attorneys Ken Harper and Bobby Robinson; Warren County Judge John Price Sr.; Allen’s neighbor, Jan Black-edge, and the Rev. Patrick Ferrell, pastor of St. Paul’s Catholic Church. Allen also testified. Much of the testimony centered around Allen’s relationship with his late wife, Candy. The testimony was that Candy was excessively controlling of Allen, had a need to live outside the family’s means, ran up tens of thousands of dollars in credit-card bills, insisted on adopting three children in addition to the two biological children she shared with Allen because she wanted some with brown hair and brown eyes, tried to return one of the adopted children when it became known he had learning disabilities, refused to assist Allen in caring for the children, developed an addiction to pain medication, and routinely threatened to leave Allen and take his children away if he did not give her what she wanted. In fact, Allen and Candy were twice investigated by the Department of Human Services due to anonymous tips related to Candy’s treatment of the children. Ultimately, Candy died as a result of a drug overdose.
¶ 8. Judge Price testified that it was his opinion that Candy’s actions left Allen detached from reality, and the only explanation for his misconduct was that he had a mental breakdown due to the stress of his situation. Allen testified that his only explanation for his misconduct was that he had panicked at the thought of not being able to do the work he had done his entire career and not being able to support his family. Allen further testified that he had sought medical treatment after the initial Tribunal, and that the doctor had determined that Allen was depressed and functioning at only sixty-to-sixty-five percent. Allen testified that he did not offer any evidence of his mitigating family circumstances at the original hearing because he still had not come to terms with Candy’s death or what he had been through.
¶ 9. After the hearing, the Tribunal again took the matter under advisement. On June 11, 2012, the Tribunal issued a new order in Allen’s case, which was filed in this Court on July 23, 2012. In the order, the Tribunal found that, while Allen had never denied his misconduct, there were mitigating factors that the Tribunal was not aware of at the time it issued its original order of disbarment. Specifically, the Tribunal found that it had not known that Allen’s wife had died of a suicide or that Allen was under extreme stress and had not fully recovered from the suicide at the time of the original hearing. The Tribunal concluded that there “is ample proof in the record of this matter providing extenuating circumstances for mitigation or amendment of the prior decision of this Tribunal in order to prevent manifest injustice.” The Tribunal ordered that Allen be suspended from the practice of law for two years and that he successfully complete treatment through the Mississippi Bar-sponsored Lawyers and Judges’ Assistance Program for depression and emotional problems prior to reinstatement.
¶ 10. The Mississippi Bar (“Bar”) now appeals from the Tribunal’s amended order.
*167 DISCUSSION
¶ 11. Rule 9 of the Rules of Discipline for the Mississippi State Bar governs appeals from the Tribunal’s final disposition. Because the Tribunal’s decision was based on Allen’s admission of misconduct, the sole question on appeal is whether the two-year suspension imposed by the Tribunal is sufficient under the facts of this case and the applicable law. M.R.D.9(b). “We review attorney discipline matters de novo on a case-by-case basis, and we are permitted to defer to the finding of the Tribunal because it has the exclusive opportunity to observe the demeanor and attitude of the witnesses.”[2] We examine nine criteria when reviewing sanctions imposed against an attorney in a disciplinary action:
(1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; (5) the sanction imposed in similar cases; (6) the duty violated; (7) the lawyer’s mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating or mitigating factors.[3]

Nature of the Misconduct Involved

¶ 12. The Tribunal found that Allen had violated Rules 1.15(b) and 8.4(a, b, c, and d) of the Mississippi Rules of Professional Conduct. Allen admits that he committed misconduct by forging title documents and conducting title work when he did not have authority to do so. Allen also admits that he accepted money from clients for premiums for title insurance that he could not provide. Allen argues that he intended to get the matter straightened out, and that his intent was shown by putting the money in escrow and not spending it.
¶ 13. The Bar argues that Alen’s actions were criminal, even though he was not charged with a crime. The Bar further argues that Rule 8.4(b), which provides that it is misconduct for a lawyer to commit a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer, does not require that the lawyer be charged with a crime to violate the rule.

Need to Deter Similar Misconduct

¶ 14. There is a need to deter similar misconduct, as attorneys should not violate their clients’ trust, hold themselves out to be able to perform certain work which they know they cannot do, or accept payment for work which cannot be completed. The Bar argues that Allen’s conduct was criminal and cannot be condoned, and that the deterrent must be severe to be effective.

Preservation of the Dignity and Reputation of the Profession

¶ 15. The Bar argues that the dignity and reputation of the profession is severely impacted when a lawyer engages in criminal misconduct, and that the Bar is required to seek substantial sanctions, in such situations. Indeed, this Court has said that one of the most important considerations “when contemplating sanctions is vindicating ‘in the eyes of the public the overall reputation of the bar.’ ”[4]

Protection of the Public

¶ 16. The Bar argues that the public must be protected from lawyers who com-’ *168 mit fraud in their practices. The Bar further argues that the ability to police itself is a valuable aspect of the legal system, and that the public must have faith that lawyers who violate the professional rules of conduct will be appropriately sanctioned. Further, there is a need to protect the public from false representations made by lawyers.

Sanctions Imposed in Similar Cases

¶ 17. The Bar and Allen both were unable to find any Mississippi cases in which a lawyer has admitted misconduct that is criminal in nature, but was not charged with or convicted of a crime. The Bar argues that lawyers are regularly disbarred or given long suspensions for stealing, embezzling, and converting client funds, citing McIntyre v. Mississippi Bar, 38 So.3d 617 (Miss.2010); Mississippi Bar v. Sweeney, 849 So.2d 884 (Miss.2003); Mississippi Bar v. Coleman, 849 So.2d 867 (Miss.2002); Cotton v. Mississippi Bar, 809 So.2d 582 (Miss.2000); and Reid v. Mississippi State Bar, 586 So.2d 786 (Miss.1991). The Bar further argues that disbarment is appropriate when a lawyer engages in criminal behavior, even if he is not convicted of a crime, and further argues that Allen converted his clients’ money that he obtained by fraud and deceit at the time he accepted the money, even though he never spent the money.
¶ 18. Allen argues that, because he did not spend the client funds he wrongfully accepted, a two-year suspension is adequate. Allen cites a case from New Mexico and a case from Georgia in support of his position, although he admits that they are factually distinguishable.[5]
¶ 19. We have not found any Mississippi cases involving similar facts. While it is true that disbarment is automatic when a lawyer has been convicted of, pleaded guilty to, or entered a plea of nolo conten-dere to certain crimes, that has not occurred in this case, and our rules do not impose a mandatory sanction unless a lawyer has been charged with or convicted of a crime.[6] Furthermore, although the cases cited by the Bar are instructive, they involve lawyers who misappropriated and converted client funds and are distinguishable from the instant action, as Allen never spent the funds he improperly received from his clients, and the funds have been returned. We also note that, in two of the cases cited by the Bar, the lawyer who misappropriated client funds was not disbarred, but was suspended for three years.[7] The cases cited by Allen also are not persuasive, as they involve different factual situations and violations of the rules of professional conduct of other states.

The Duty Violated

¶ 20. The Tribunal found that Allen had violated Rules 1.15(b) and 8.4(a, b, c, and d) of the Mississippi Rules of Professional Conduct. The Bar argues that Allen violated his duty to properly handle the funds entrusted to him and to treat the banks, buyers, and sellers involved in the improperly handled real estate transactions honestly. Allen admits that he engaged in misconduct by conducting title work and forging title documents when he did not have authority to do so. Allen also admits that he accepted money from clients for premiums for title insurance that he could not provide. Clearly, Allen demonstrated *169 unprofessional and unethical conduct involving misrepresentation.

The Lawyer’s Mental State

¶ 21. The Bar argues that Allen knew his misconduct was wrong, yet "he intentionally continued to engage in fraud. The Bar further argues that this case should focus on Allen’s mental state at the time he committed the misconduct, not at the time his wife died, almost a year after the misconduct occurred. The Bar argues no evidence is in the record that Allen’s mental state was impaired at the time he engaged in misconduct.
¶ 22. Allen argues that the evidence shows that he was under immense mental stress at the time the misconduct occurred and points to his thirty-year history as an honorable attorney until that point as evidence that his conduct was out of character. Allen argues that his actions were the result of panic at the thought of losing his children to his wife if he was unable to practice law, and that he did not act out of greed. Allen further argues that his witnesses, such as Judge Price, testified that he was under mental stress at the time the misconduct occurred, that there was no other explanation for his behavior, and that such testimony is competent on the issue of mental impairment.
¶ 23. We find that the record contains sufficient evidence to support the Tribunal’s finding that Allen was under significant mental stress at the time the misconduct occurred.

Actual or Potential Injury Resulting From the Misconduct

¶ 24. The Bar argues that Allen’s misconduct actually harmed the parties for whom he conducted loan closings and from whom he collected insurance premiums. The Bar argues that those parties did not receive title insurance and that Allen did not return the premiums he collected to the parties, although the Bar did so through an interpleader action. The Bar further argues that the fact that Allen never spent the improperly obtained funds is of no importance because he deprived the parties involved of the use of their funds during the time that he held them. The Bar also argues that Allen put the funds at risk by placing them in his lawyer trust account, which had the potential to be garnished by Allen’s creditors.
¶ 25. Allen argues that his clients suffered no loss because the funds have been returned. Allen further argues that, while his conduct was dishonest, the risk to his clients was minimal because he actually performed the title searches that would have been the basis of the title insurance policies. The record is unclear regarding whether the clients later received the title insurance they had paid for. Even though all funds were refunded to clients, clearly there was a potential for client loss.

Existence of Aggravating or Mitigating Factors

¶ 26. The Bar argues that aggravating factors include Allen’s selfish motive to make money, a pattern of misconduct, multiple offenses, illegal conduct, and substantial experience in practicing law. The Bar argues that Allen stopped his misconduct only because he was caught. The Bar further argues that the Tribunal did not specify what mitigating factors it found, but that there was no excuse for Allen’s behavior. The Bar argues that, while it has sympathy for Allen’s situation, he committed a series of intentional, criminal acts because he needed the money, not because he was ill or distraught. The Bar argues that Allen’s decision to commit fraud and forge title documents indicates that he is not fit to practice law and should be disbarred. The Bar also suggests that, if Allen is allowed to be reinstated, that this Court order him to sign a contract with *170 the Lawyers and Judges’ Assistance Program so it can monitor his treatment for depression before he can be reinstated, as the Program does not have a program for treating depression.
¶ 27. Allen argues that the record shows that extenuating circumstances exist in this case and urges us to give deference to the recommendation of the Tribunal. Although Allen’s personal problems do not excuse his ethical violations, we find that the record supports the Tribunal’s finding that Allen’s family and financial situation created extreme stress in his life and practice. Other mitigating factors include Allen’s cooperation with the Bar, his admission of his misconduct, his returning the client funds he improperly received, and the fact that this is Allen’s first disciplinary action in his career. Aggravating factors include that the misconduct was a pattern and not a single occurrence, and that the misconduct continued until Allen was caught.
CONCLUSION
¶ 28. Although we review disciplinary matters de novo, we often defer to the recommendations of the Tribunal. In this case, the Tribunal considered all of the evidence and personally observed the testimony presented. The Tribunal found that, even though Allen had violated several rules of professional conduct, the mitigating circumstances warranted that Allen be suspended from the practice of law for two years and be ordered to complete treatment for depression prior to reinstatement. We agree that, under the facts of this case, the sanction imposed by the Tribunal is sufficient. We note that Allen will not automatically be reinstated to the practice of law at the end of his two-year suspension. Rather, under our rules, any lawyer suspended for more than six months or disbarred must petition this Court for reinstatement, and this Court will be able to re-evaluate Allen’s circumstances if and when he petitions for reinstatement.[8] Therefore, we affirm the order of the Tribunal, but we also order Allen to sign a contract with the Lawyers and Judges’ Assistance Program to monitor his treatment for depression if it does not have its own program.
¶ 29. J. ALLEN DERIVAUX, JR., SHALL BE SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR A PERIOD OF TWO (2) YEARS AND MUST COMPLETE TREATMENT PRIOR TO REINSTATEMENT.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.

. Rule 1.15(b) provides as follows: “[ujpon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property the client or third person is entitle to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.” Rule 8.4 provides in relevant part as follows: "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another; (b) commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice.”

. Mississippi Bar v. Walls, 890 So.2d 875, 877 (Miss.2004) (citation omitted).

. Id.See also Liebling v. Mississippi Bar, 929 So.2d 911, 918 (Miss.2006).

. Mississippi Bar v. Walls, 797 So.2d 217, 219 (Miss.2001) (citation omitted).

. In re Sedillo, 84 N.M. 10, 498 P.2d 1353 (1972); In re Harste, 285 Ga. 80, 673 S.E.2d 235 (2009).

. See M.R.D. 6.

. Sweeney, 849 So.2d 884; Coleman, 849 So.2d 867.

. See M.R.D. 12.