545 S.E.2d 823

**In the Matter of Carolyn Elizabeth CRAIG, Respondent.**

**No. 25285.**

Supreme Court of South Carolina.

Submitted March 21, 2001.

Decided April 23, 2001.

Henry B. Richardson, Jr., and Assistant Deputy Attorney General J. Emory Smith, Jr., both of Columbia, for the Office of Disciplinary Counsel.

Carolyn E. Craig, pro se, of Christiansburg, Virginia.

PER CURIAM:

In this attorney disciplinary matter, respondent and Disciplinary Counsel have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. Respondent admits misconduct and consents to disbarment. She also consents to pay restitution as described in the agreement and pay the cost of these proceedings. We accept the agreement and disbar respondent. The facts as admitted in the agreement are as follows.

I.

Respondent misappropriated $62,120.34 while acting as a closing agent for a single family residential mortgage transaction. In September 1998, Standard Federal Bank of Michigan (Standard) sent a draft payable to the Craig Law Firm in the amount of $62,120.34. The funds were to be held in trust by respondent and disbursed according to the closing instructions that accompanied the check. The parties cancelled the transaction, obligating respondent to return the funds to Standard. Respondent sent Standard a check dated September 1998 from her Coastal Federal trust account, but the check was returned for insufficient funds. The balance in respondent's trust account was below the amount of $62,120.34 on October 7, 1998 and went as low as $3.95 on February 28, 1999. During the period between September 1998 and February

1999, respondent wrote twenty-three checks to "cash" in the amount of $57,750. Respondent has not responded to Standard's many inquiries about the return of its funds.

## II.

Respondent opened an escrow account with NationsBank in November 1998. On December 21, 1998, respondent deposited funds into the account, including the amount of $5,767.75, for a client in connection with real estate closings she was handling for him. Beginning on or about March 11, 1999, funds in the escrow account dropped below the amount of $5,767.75. By the end of March, the account balance was $18.43. No disbursement of these funds was made for the client's purposes. On December 21, 1998, respondent wrote a check on this account to Spaulding and Evenflo Company for $5,767.75 for the client. The check was presented on April 30, 1999 and returned for insufficient funds. Respondent misappropriated these funds.

## III.

Respondent was not diligent in representing Husband and Wife in an adoption matter. Respondent failed to provide her clients with their file when they terminated her representation of them and lost documents her clients had provided her. Respondent failed to appear at family court hearings on January 12 and 29 and February 26, 1999 although she had been given notice of the hearings. She misrepresented to the court that she was unable to attend the January hearings due to illness when she was not actually ill. She failed to turn over her clients' entire file to attorney Jay M. Bultz as ordered at the January 26 hearing. As a result, she was found in civil contempt by order of the Honorable Robert Armstrong, family court judge. She was sentenced to thirty days imprisonment but was permitted to purge herself of the contempt by turning over the specified file material. She failed to submit a doctor's certificate as ordered by the family court. As a result, she was found in criminal contempt by Judge Armstrong and sentenced to 72 hours imprisonment. Respondent was arrested and incarcerated on March 25, 1999. Pursuant to an interim order of the Honorable H.T. Abbott,

III, on March 26, 1999, respondent was released from the civil contempt sanction due to substantial resolution of the purge provisions. The 72 hour incarceration was modified, and she was ordered released at 8:00 a.m. on March 27, 1999. On March 26, 1999, respondent paid the clients $2,443.14 for attorneys fees and costs as ordered by Judge Armstrong. At the hearing, subsequent counsel for the clients, Jay Bultz, verified that the fees and costs were eventually paid by respondent, but the amount ordered covered only the fees and costs associated with the rules to show cause and the hearings, not the $1,000 paid by the clients for the adoption. Wife testified that respondent did not earn the fee $1,000. Mr. Bultz testified that although respondent did turn over file material, some key documents were missing and he had to reconstruct them.

## IV.

A client retained respondent on August 4, 1998 regarding his divorce and paid her $1,500 for attorneys fees. Respondent failed to do any significant work for her client and failed to appear in court on his behalf at a hearing scheduled for January 11, 1999. Respondent failed to return the client's calls and has not refunded his attorneys fees. According to the hearing testimony of Thomas D. (Val) Guest, the client is now deceased. Mr. Guest assumed the representation of the client after he obtained a release from respondent. While reviewing the client's file, Mr. Guest learned of a settlement offer which was never tendered to the client by respondent. Had she sent him the settlement offer, the client would have accepted it, but the offer was no longer valid when Mr. Guest found it.

## V.

Respondent undertook to represent a client in a family court matter. In pleadings in that matter, she failed to request that her client receive a share of her spouse's retirement. Respondent was dilatory in responding to discovery requests. Respondent failed to protect her client's interests after her termination from her former firm. Respondent left the Surfside Beach area for an extended period of time

without advising her client how she could contact her and without notifying her how long she would be gone. Respondent failed to notify the court of her absence and failed to seek protection. Respondent failed to inform her client of a court-ordered mediation scheduled for the period of her absence and the necessity of her attendance, and a hearing to compel discovery. Neither respondent nor her client attended either the mediation or the hearing. Respondent's client was fined $500 for her failure to attend the mediation. Respondent did not reimburse her client for the $500, nor did respondent earn all of the $4,000 legal fee the client paid her. Additionally, when the client eventually tracked down respondent in Florida, respondent asked her client to do the work of arranging witnesses for a hearing.

## VI.

Respondent wrote a number of checks on both the Coastal and NationsBank escrow accounts payable to "cash."

## VII.

The Honorable H.T. Abbott, III, family court judge, reported respondent's failure to appear at roster meetings in his court in January and February 1999. Respondent failed to appear at the February 25, 1999 call of an abuse and neglect case for which she was guardian ad litem and Judge Abbott, on his own motion, removed her as guardian due to difficulties communicating with her.

## VIII.

Attorney appointed to assist, Thomas D. Guest, Jr., reported respondent's failure to respond to numerous inquiries from clients about matters for which she was counsel.

## IX.

Respondent failed to respond to letters of inquiry from the ODC and notice of full investigation as to all of the above complaints except one (although apparently no separate letters of inquiry were sent as to the second misappropriation matter).

## X. Conclusions

Respondent has engaged in a high degree of misconduct including misappropriation, lack of diligence for her clients, failure to communicate, failure to obey court orders, and failure to cooperate with the investigation of these matters.

By her conduct, respondent violated the following provisions of the Rules of Professional Conduct (Rule 407, SCACR):

- Appropriated client funds to her own use. Rule 1.15.

- Failed to deliver promptly to a client or third person funds that the client or person was entitled to receive. Rule 1.15.

- Failed to render promptly a full accounting regarding property of the client or third person. Rule 1.15.

- Committed criminal acts that reflect adversely upon the lawyer's honesty, trustworthiness, and fitness as a lawyer in other respects. Rule 8.4(b).

- Engaged in conduct involving moral turpitude. Rule 8.4(c).

- Engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation. Rule 8.4(d).

- Knowingly made a false statement of material fact or law to a tribunal. Rule 3.3(a)(1).

- Failed to act with reasonable diligence and promptness in representing a client. Rule 1.3.

- Failed to keep a client reasonably informed about the status of a matter and comply promptly with reasonable requests for information. Rule 1.4(a).

- Failed to represent a client competently. Rule 1.1

- Terminated representation without taking steps to protect client interests. Rule 1.16.

- Engaged in conduct that is prejudicial to the administration of justice. Rule 8.4(e).

Respondent also violated the following Rules for Lawyer Disciplinary Enforcement (Rule 413, SCACR):

- Willfully violated a valid court order issued by a court of this state. Rule 7(a)(7).

- Knowingly failed to respond to a lawful command from a disciplinary authority to include a request for a response or appearance. Rule 19(b)(1) and (c)(3).
- Violated the Oath of Office taken upon admission to the practice of law. Rule 7(a)(6); Rule 9, Rules for the Examination and Admission of Persons to Practice Law in South Carolina.
- Engaged in conduct tending to pollute the administration of justice or bring the courts or legal profession into disrepute and conduct demonstrating unfitness to practice law. Rule 7(a)(5).

Moreover, respondent violated the Rules of Professional Conduct (RPC Rule 8.4(a) and RLDE Rule 7(a)(1)), violated Rule 417, SCACR, by misappropriating client funds and writing checks on her trust account made payable to "cash," and failed to cooperate with the ODC's investigations (*Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982)).

We have found disbarment an appropriate sanction in other similar cases, including the recent case of *Matter of Trexler*, 343 S.C. 608, 541 S.E.2d 822 (2001), which also involved misappropriation of client funds and other acts of misconduct. *See also Matter of Driggers*, 334 S.C. 40, 512 S.E.2d 112 (1999) (attorney consented to disbarment for misappropriating funds, failure to appear in court on clients' behalf, and other misconduct similar to that shown in this case).

Respondent has agreed to pay the $396.36 cost of these proceedings. Respondent has also agreed to pay restitution to Standard Federal Bank and her wronged clients as specified in the Agreement. We accept the Agreement for Discipline by Consent and disbar respondent. The ODC is hereby ordered to implement a payment plan to ensure the timely payment of restitution to the victims in this case, or the Lawyers' Fund for Client Protection if any victims have already been paid from that fund. With any application for reinstatement, respondent must provide satisfactory evidence that she has complied with the payment plan, completed payment of all restitution owed, and is fit to return to the practice of law.

Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that she

has complied with Rule 30 of Rule 413, SCACR, and shall also surrender her Certificate of Admission to the Practice of Law to the Clerk of Court.

DISBARRED.

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.