# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of William Joseph Cutchin, Respondent.

Appellate Case No. 2014-002498

Opinion No. 27518
Heard March 5, 2015 – Filed April 22, 2015

## DISBARRED

Disciplinary Counsel Lesley M. Coggiola, and Assistant Disciplinary Counsel Julie K. Martino, both of Columbia, for Office of Disciplinary Counsel.

William Joseph Cutchin, of Tallahassee, Florida, *pro se*.

**PER CURIAM:** William Joseph Cutchin (Respondent) engaged in a course of conduct where he undertook representation of clients but failed to perform the services promised, accepted fees for work not completed, and comingled and misappropriated client funds. Additionally, Respondent closed his law practice and moved out of state without notifying clients or providing any forwarding information. We disbar Respondent, order him to pay the costs of this proceeding, make restitution, and to complete the Legal Ethics and Practice Program, Ethics School, and Trust Account School prior to seeking readmission to the South Carolina Bar.

## PROCEDURAL/FACTUAL BACKGROUND

Formal charges were filed against Respondent by the Office of Disciplinary Counsel (ODC) on November 8, 2013. Respondent filed an answer on December 12, 2013. The panel of the Commission on Lawyer Conduct served Respondent with an order to appear before the panel on June 12, 2014, and the panel convened on August 12, 2014. Respondent did not appear. As a result of his failure to

appear, Respondent is deemed to have admitted the factual allegations in the formal charges pursuant to Rule 24(b), RLDE, Rule 413, SCACR. The factual allegations are as follows:

## Matter A

Respondent was retained to prepare a will and trust for a client. Respondent prepared the documents, and they were signed by the client. After client's death, complainants, the trustees in this matter, asked for assistance in paying medical and funeral expenses and probating client's estate. Respondent agreed and charged complainants $1,000.00.

Respondent suggested complainants sign several blank counter checks on the trust account so he could pay bills as they came due. The complainants agreed, and left several signed, blank checks in Respondent's possession. He then wrote checks on the trust account that totaled $12,500.00, only $1,000.00 of which was authorized as payment to him. Of the $11,500.00 fraudulently deposited into his Respondent's operating account, only $2,381.24 was used on behalf of the trust; $9,118.76 was misappropriated.

After repeated attempts to receive records requested regarding this matter, ODC issued a subpoena requiring Respondent to appear for an interview with the records. Respondent failed to appear. Instead, Respondent wrote a letter to ODC stating he had closed his practice, never intended to practice law again, and was moving out of the state.

## Matter B

Respondent was retained by client to probate the will of client's late wife, and took possession of the will and death certificate. When the client attempted to contact Respondent about receiving funds from his wife's life insurance policy, he discovered Respondent's office was empty and his telephone disconnected. The client's e-mails were returned as undeliverable. Respondent did not inform client that he was closing his office, provide contact information to client, or advise him to find another attorney.

## Matter C

A client retained Respondent for assistance in estate planning, and paid him $3,900.00. The client also provided his and his wife's wills as well as the title to their home. After Respondent drafted the estate planning documents, client

discovered an error and asked that it be corrected. The client spoke to Respondent's paralegal, who answered him she would correct the problem.

When client returned to Respondent's office to retrieve the corrected documents, he discovered it was vacant. There was no notice on the door saying where Respondent had gone or what happened to the firm. When client attempted to call, the telephone had been disconnected, and his e-mails were returned as undeliverable. None of client's original documents were ever returned.

The client filed a complaint against Respondent with the Resolution of Fee Disputes Board. The board found in favor of client in the amount of $2,000.00.

## Matter D

Respondent was retained by client to draft a simple trust. The client initially paid $1,000.00, and later paid an additional $500.00. The client never heard from Respondent again. He attempted to call but the office telephone service was disconnected, and all e-mails to Respondent were returned as undeliverable.

## Matter E

Respondent was retained by client to handle his deceased father's estate. When complainant, client's mother, took over the estate after client's death, it had been ongoing for six years with little progress. Respondent asked for extensions to file documents in the probate court on May 14, 2007, December 3, 2007, January 6, 2010, December 29, 2010, and October 21, 2011. On August 6, 2012, Respondent asked for another extension and falsely represented he needed the extension because he had just recently gotten the case and needed time to put everything together. When complainant attempted to contact Respondent, she discovered he had abandoned his office. Respondent's telephone was disconnected and Respondent made no effort to inform her that he was closing his practice. Although client paid Respondent $3,000.00 and complainant paid an additional $2,500.00, Respondent never did the work he was hired to complete.

## Matter F

Respondent was hired by client to assist him with estate planning. After Respondent retitled deeds to client's property but filed them incorrectly, client obtained paperwork to correct the problems and took it to Respondent. The client later attempted to contact Respondent to ensure the corrections had been made and discovered the telephone had been disconnected. The client drove to Respondent's

office, but it was closed and no forwarding information was available. Respondent never returned documents to client.

## Matter G

Husband and wife clients paid $400.00 for Respondent's "Estate Planning Updating" service. Although clients had questions about the estate planning process, Respondent was not available. The clients made an appointment to meet with Respondent, but Respondent did not show up; his paralegal did.

Respondent's paralegal took possession of clients' car title, which was never returned. Later, Respondent sent clients a letter telling them he was resigning as their attorney because of an undisclosed conflict. The clients were unable to obtain any of their original documents from Respondent.

## Matter H

Respondent was retained by a client to create a living trust. After client's death, the trustee paid $4,500.00 for representation of the estate and trust. Respondent mismanaged the trust to the detriment of the trustee and his family.

Complainant, the trustee, paid an additional $3,895.00 to Respondent for preparation of a personal trust. Respondent did nothing with regard to the personal trust except provide a trust/estate planning notebook. Complainant also submitted banking records and property deeds to Respondent, which were never returned.

## Matter I

Respondent attempted to sell his practice to another attorney. Respondent did not give written notice to his clients or publish a notice of the sale in a newspaper of general circulation in his geographic area, as required by the rules.

## Matter J

Respondent has failed to cooperate with the Attorney to Protect Client Interests (ATP), who needed to use an Internet-based service to find Respondent because he abandoned his office and left no forwarding information. After the ATP found Respondent, he told the ATP he was moving to Florida but did not provide a forwarding address or any contact information whatsoever. Respondent left the state and has had very limited communication with the ATP.

# LAW/ANALYSIS

This Court reserves the sole authority to discipline attorneys and determine appropriate sanctions. *In the Matter of Thompson*, 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). Although the Court may draw its own conclusions and make its own findings of fact, the unanimous findings and conclusions of the panel are entitled to significant respect and consideration. *Id.* at 11, 539 S.E.2d at 401.

We find based on the foregoing facts that Respondent has violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (competent representation); Rule 1.2 (scope of representation); Rule 1.3 (diligence and promptness in representing client); Rule 1.4 (communicating with clients); Rule 1.5 (unreasonable fees and expenses); Rule 1.15 (misappropriation of client funds); Rule 1.16 (protecting client interests when terminating representation); Rule 1.17 (lawyer's responsibilities for sale of law practice), Rule 2.1 (rendering candid advice); Rule 3.2 (expediting litigation); Rule 5.3 (lawyer's responsibilities regarding nonlawyer assistants); Rule 8.1(b) (failure to disclose facts in connection with a disciplinary matter); Rule 8.4(b) (committing a criminal act that reflects adversely on honesty, trustworthiness, or fitness as a lawyer); Rule 8.4 (d) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e) (conduct that is prejudicial to the administration of justice). We find Respondent has also violated Rule 402(k)(3) (lawyer's oath) and Rule 417 (financial recordkeeping), SCACR.

The panel recommended disbarment. While disbarment is an extraordinary sanction, "the primary purpose of disbarment . . . is the removal of an unfit person from the profession for the protection of the courts and the public, not punishment of the offending attorney." *In the Matter of Pennington*, 393 S.C. 300, 304, 713 S.E.2d 261, 263 (2011) (quoting *In the Matter of Burr*, 267 S.C. 419, 423, 228 S.E.2d 678, 680 (1976)). We have found disbarment is an appropriate sanction in similar cases. *See, e.g.*, *In the Matter of Trexler*, 350 S.C. 483, 487, 567 S.E.2d 470, 472 (2002) (disbarring attorney for multiple acts of misconduct, including misappropriation of client funds); *In the Matter of Craig*, 344 S.C. 646, 651, 545 S.E.2d 823, 826 (2001) (disbarment is appropriate sanction where attorney commits multiple acts of misconduct, including misappropriation of client funds).

It is significant that Respondent has failed to meaningfully participate in these disciplinary proceedings. In addition to failing to appear at the panel hearing,

Respondent did not appear during oral argument before the Court. As this Court has stated:

> An attorney usually does not abandon a license to practice law without a fight. Those who do must understand that "neglecting to participate [in a disciplinary proceeding] is entitled to substantial weight in determining the sanction." An attorney's failure to answer charges or appear to defend or explain alleged misconduct indicates an obvious disinterest in the practice of law. Such an attorney is likely to face the most severe sanctions . . . .

*In the Matter of Hall*, 333 S.C. 247, 251, 509 S.E.2d 266, 268 (1998) (quoting *In the Matter of Sifly*, 279 S.C. 113, 115, 302 S.E.2d 858, 859 (1983)).

Respondent fraudulently deposited client funds into his operating account, and misappropriated client funds. Further, Respondent failed to provide representation he had promised, abandoned his practice without proper closure, has not cooperated with the ATP, and failed to engage in these disciplinary proceedings. Respondent's actions have shown a clear disinterest in continuing the practice of law in South Carolina. We therefore agree that disbarment is the appropriate sanction.

## CONCLUSION

We disbar Respondent and order him to pay the costs of these proceedings in the amount of $1,161.75. We also order him to make restitution in the amount of $9,118.76 to the complainants in Matter A; $2,000.00 to the client in Matter C; $1,500.00 to the client in Matter D; $5,500.00 to the complainant in Matter E; $400.00 to the clients in Matter G; and $8,395.00 to the complainant in Matter H. Respondent shall enter into a restitution payment plan with ODC within forty-five days of the filing of this opinion. We also order Respondent to complete the Legal Ethics and Practice Program, Ethics School, and Trust Account School as conditions of readmission.

Within fifteen days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR, and shall also surrender his certificate of admission to the practice of law in South Carolina to the Clerk of Court.

**DISBARRED.**

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE** and **HEARN, JJ.,** concur.